PALACIOS ET AL., APPELLANTS, v. BRASHER ET AL., AP-
PELLEES.

1. UNDERTAKING—AUTHORITY TO COMPLETE.
Authority to complete an undertaking by filling in the necessary blanks,
after the same has been signed by obligors, may be implied.
2. SAME.
When a person signs an incomplete undertaking and delivers the same
to another for a particular purpose and with ostensible authority
to fill in any needed matter to make it effective, and it is accepted
in its completed form by the obligee, he is estopped from contro-
verting its validity to the prejudice of the obligee.

*Appeal from the District Court of Arapahoe County.*

THIS is an action upon an undertaking given in pursuance
of sections 111 and 112 of the Code of Civil Procedure to
release attached property. On the 12th day of December,
1888, appellants filed their complaint in the district court of
Arapahoe county, setting forth the institution by them of
an action in the county court of Arapahoe county in Sep-
tember, 1886, against B. P. Brasher, doing business as B. P.
Brasher & Co.; the issuance of an attachment therein and
the seizure thereunder by the sheriff of Arapahoe county of
certain personal property of defendant; the release of the
property so attached upon the execution and delivery to the
sheriff of the following written instrument:
" State of Colorado, County of Arapahoe, ss.
" In the county court, sitting within and for the county of
Arapahoe, the September term, A. D. 1886.
" B. Palacios, S. Rodriguez and F. Garcia, copartners as
Palacios, Rodriguez & Company, Plaintiffs, v. B. P. Brasher,
doing business as B. P. Brasher & Company, Defendant.
" Whereas, the above named plaintiffs have sued out an
attachment in the above entitled action in the county court
within and for said county of Arapahoe, against the above
named defendant, by virtue of which said writ of attachment
the following described property, to wit: " Four barrels of
VOL. XVIII—38

sherry, 192 gallons; three barrels of Hermitage Whiskey, 116 gallons; one barrel Marion county whiskey, 38 gallons; one barrel Brasher's sour mash whiskey, 38 gallons; six barrels California brandy, 233 gallons; one barrel Bond & Willian whiskey, 38½ gallons—of the value of seventeen hundred and sixty-nine dollars, has been seized and attached; and, whereas, the said defendant is desirous of releasing the said property from said attachment according to the form of the statute in such case made and provided.

" Now, therefore, we, the undersigned, residents and freeholders of the county of Arapahoe, State of Colorado, in consideration of the premises and of the releasing of said property, do jointly and severally undertake and promise to the effect that in case the plaintiffs recover judgment in said action, and said attachment is not dissolved, then the said defendant will, on demand, re-deliver to the proper officer such attached property, or in default of such delivery, that the said defendant, and we as his sureties, will pay or cause to be paid to the said plaintiff the full value of the property so released.

" Dated this 29th day of September, A. D., 1886.

" (Signed)          B. P. BRASHER,

" PETER P. EGAN,

" GEORGE W. BROWN.

" State of Colorado, County of Arapahoe, ss.

" Peter P. Egan and George W. Brown, the sureties whose names are subscribed to the within undertaking, being severally duly sworn, each for himself says that he is a resident and property holder within the said Arapahoe County, and that he is worth the sum specified in the said undertaking as the penalty thereof, and over and above his just debts and liabilities, in property not by law exempt from execution in this state.

" (Signed)          PETER P. EAGAN,

" GEORGE W. BROWN.

" Subscribed and sworn to before me this 29th day of September, A. D. 1886.

(Seal)          " E. A. CLARK,

" Notary Public."

Alleging the execution of the same by B. P. Brasher as principal and Peter P. Egan and George W. Brown as sureties; that judgment was obtained in the county court in that action on the 15th day of October, 1887, for the sum of $662 and costs; the issuance of an execution thereon against the defendants and a return thereof wholly unsatisfied; a demand upon the said Egan and Brown for a return of the property so released by virtue of this undertaking, and a failure upon their part to return said property, or to satisfy said judgment and costs.

Egan and Brown, in their answer, admit all the allegations of said complaint except the execution of the written undertaking as set forth therein.

For a further answer they allege that on the day it is shown that this undertaking purports to have been executed they signed their names to a blank piece of paper, which they are informed and believe is the same piece of paper which is alleged in said complaint to be an undertaking, but when so signed, said paper was blank, and was not the instrument corresponding to the copy set forth, either in form or effect.

They further allege that " they never legally authorized any person to write out the undertaking or bond over their signatures on the said blank paper, so signed by them as aforesaid." Under the issues so joined a trial was had to a jury, and the evidence introduced was in substance as follows:

On the 29th day of December, 1886, at the Windsor Hotel in the city of Denver, Egan and Brown, upon request of B. P. Brasher, signed their names to a certain paper, which is admitted to be the undertaking set out in plaintiffs' complaint, except that it did not then contain a specific description of the property attached, or its value. That they also signed the affidavit printed on the back of said instrument as to their qualifications as such sureties.

E. A. Clark, an attorney representing B. P. Brasher at that time, testifies that they objected to signing the bond in blank; that he explained to them that the amount involved would not exceed $2,000, and that if it did exceed that amount the

bond should not be used. They then told him that they would leave the thing in his hands; that they signed the bond and he took their verification on the back of it. Defendants deny having any such conversation, and claim to have signed the undertaking in ignorance of what it was; and that they never authorized any one to fill any blanks or make any additions thereto.

The court below instructed the jury as follows:

" And they (the defendants) say there was nothing said about any one filling out that instrument, and there was no authority given any one to fill out that instrument or insert anything else in there but what was to be found above their signature. If you should find that to be true, and that there was no express authority given to Clark to fill in the blanks in that bond, or if you should find that these two sureties did not know that there were blanks in the bond—that they thought it was a complete instrument as they had signed it, then you must find for the defendants.

" I do not think there is sufficient evidence in this case for me to instruct you under any consideration that there could be any implied authority in Clark to fill out the bond."

This trial resulted in a verdict and judgment for defendants. To reverse this judgment plaintiffs below prosecute this appeal.

Mr. CHARLES M. CAMPBELL, for appellants.

Mr. E. W. WAYBRIGHT, for appellees.

MR. JUSTICE GODDARD delivered the opinion of the court.

The only question for our determination is presented by the assignment of error, predicated upon the giving of the instruction above quoted.

Counsel for the respective parties have devoted most of their briefs and argument to the discussion of the question of the adequacy of an oral authorization to confer the power

to fill blanks in a sealed instrument after the same is signed and before delivery. The pertinency of this contention to this case is not readily discernible, since the instrument sued on is not a sealed instrument but is a parol contract, and of a class to which the strict and technical doctrine relied on by counsel for appellees is not applicable. The court below tried the case upon the theory that such authority could be conferred orally, and admitted evidence upon the question whether oral authority was given to Clark by Egan and Brown to fill the blanks with the description and value of the property attached; and submitted to the jury as the fact upon which a recovery depended, whether such authority was expressly given; hence, the pertinent inquiry is, was it error to take from the jury the consideration and decision of the question, whether, under all the facts and circumstances attending the signing and delivery of the paper to Clark in its then condition, the authority to fill the blanks therein was conferred upon him by implication?

In the case of *Inhabitants of South Berwick v. Huntress*, 53 Me. 89, Kent, J., in discussing an instruction embodying in substance the law applicable to this case, said:

" We think that when a party signs a bond and delivers it to another, not stipulating or expecting that the paper will be returned or afterwards exhibited to him, but be delivered to the obligee when perfected, and when he so delivers it there are blanks in it to be filled up before it can be perfected, and he knows the fact, those blanks may be filled out without any further knowledge or assent on his part."

And also on page 96, " It is after all a mere question of assent. Now, consent may be implied as well as expressed, and when fairly and legally inferred it is actual and effective consent, as much so as when direct authority is shown by parol."

The supreme court of the United States has announced the same principle in several cases, notably that of *Drury v. Foster*, 2 Wallace, 24. Therein the court say:

" We agree that by signing, and acknowledging the deed

in blank, and delivering the same to an agent, with an express or implied authority to fill up the blank and perfect the conveyance—its validity could not well be controverted."

In the case of the *State of Minnesota v. Young*, 23 Minn. 551, the court in discussing the implied authority of the board of county commissioners to fill the penalty in an official bond, no express authority being given, says:

"Such authority may be implied from circumstances. It may be implied from the facts proved, when these facts all taken together and fairly considered justify the inference." See also, *White v. Duggan*, 140 Mass. 18; *Smith v. Crocker*, 5 Mass. 537; *Bank of Commonwealth v. McChord*, 4 Dana, 191; *McCormick v. Bay City*, 23 Mich. 457; *Bartlett v. Board of Education*, 59 Ill. 364; *City of Chicago v. Gage*, 95 Ill. 593.

Numerous other cases might be cited in support of the rule that authority to fill blanks in such an instrument may be implied, and that when fairly inferable from the conduct of the parties, and circumstances surrounding the transaction, is as effectually given as if expressly conferred. Many of these decisions are put upon the doctrine of estoppel *in pais*, ostensible authority being the equivalent of actual authority. It certainly is consonant with justice and fairness that when a person as a surety signs an incomplete undertaking, and places the same in the hands of another to use for a particular purpose, and with ostensible authority to fill in any needed matter to make the same effective, and the same is accepted in its completed form by the obligee without negligence on his part, that such surety ought to be estopped from controverting its validity to the prejudice of such obligee; and we think that the facts in this case most strongly invoke the application of this rule. The blank, as presented to Egan and Brown for their signature, contained a printed condition that fully advised them of the extent of the obligation they were assuming; the insertion of the penalty did not affect the extent of such obligation. The printed recitals in the paper as presented were to the effect that certain property of their principal had been attached, and the condition, and essential

portion of the contract, in terms provided that in consideration of the releasing of said property they undertook and promised that if judgment was obtained in the attachment suit, and the attachment sustained, that on demand they would re-deliver such property, and in default of delivery they would pay the full value of the property so released. They were bound to know the contents of the paper they signed, and cannot evade liability by pleading want of such knowledge. To avail themselves of such a defense it must appear that they were prevented from reading the paper by some trick or artifice of the obligee. *Johnston v. Patterson*, 114 Pa. St. 398. They were also bound to know whether there were blanks that must be filled to accomplish the purpose for which such undertaking was intended. They are presumed to have known the law, and knew that to accomplish the purpose of their principal it was necessary for him to procure an undertaking in compliance with the statute. With this knowledge they signed the undertaking and placed it in his agent's hands, as we have seen, with implied authority to fill the blanks, and otherwise perfect it for the purpose of releasing the attached property. Counsel for appellees place stress upon the fact that Clark, the attorney of Brasher, made the addition, and that the appellees, by delivering the bond to him when signed, conferred no authority upon him to do so. This claim is not tenable. He was their agent as well as the agent of the principal. *Willis v. Rivers*, 80 Ga. 556.

We think the court erred in giving the instruction complained of. The evidence clearly establishes the fact that the appellees conferred the power upon their principal and upon his attorney, Clark, to fill in the specific description of the property attached, and its value, if that was necessary to make the undertaking effective. It is unnecessary to decide whether the undertaking as signed was not sufficient before the additions were made therein. And, since we are of the opinion that upon the undisputed facts the appellants were entitled to recover, the judgment is reversed and cause remanded, with directions to assess damages in favor of appellants.

*Reversed.*