### WRIGHT et al. v. A. G. McADAMS LUMBER CO. et al.    (No. 1589.)

(Court of Civil Appeals of Texas.    Amarillo.
Jan. 14, 1920.    Rehearing Denied
Feb. 4, 1920.)

1. PRINCIPAL AND SURETY ⬦⟾101(1)—PLEA OF NON EST FACTUM FOR ALTERATION NO DEFENSE TO SURETIES FOR CONTRACTOR AGAINST MATERIALMEN.

Where a construction contract was complete as a binding obligation when the sureties signed the contractor's bond containing blanks, and none of the matters mentioned, either in the stickers pasted on the contract subsequently or in a letter, tended to make a new or different contract further than authorized by Vernon's Ann. Civ. St. Supp. 1918, art. 5623a, the sureties' plea of non est factum is no defense against materialmen and subcontractors.

2. CONSTITUTIONAL LAW ⬦⟾276—PROVISION THAT CHANGE IN PLANS SHALL NOT AFFECT SURETIES' LIABILITY ON BOND NOT A DENIAL OF EQUAL PROTECTION OR OF RIGHT TO CONTRACT.

Vernon's Ann. Civ. St. Supp. 1918, art. 5623a, providing that no change in the plans of

building, construction, or method of payment shall avoid or affect liability on the bond of a building contractor, and limiting defenses to those which may be made by the contractor, does not violate federal Const. Amend. 14, as depriving the sureties of the right to contract.

3. CONSTITUTIONAL LAW ⊕⇒243—PRINCIPAL AND SURETY ⊕⇒3 — PROVISION LIMITING SURETIES TO DEFENSES OF PRINCIPAL NOT A DENIAL OF EQUAL PROTECTION.

Vernon's Ann. Civ. St. Supp. 1918, art. 5623a, providing that no change in building plans or method of payment shall affect surety's liability, and limiting sureties for a building contractor to such defenses as the contractor could make in a suit on the bond, does not violate federal Const. Amend. 14, as denying sureties the equal protection of the laws.

4. PRINCIPAL AND SURETY ⊕⇒59 — EXISTING LAW A PART OF SURETYSHIP CONTRACT.

Vernon's Ann. Civ. St. Supp. 1918, art. 5623a, being operative when defendants signed as sureties, it became part of their contract, and they are bound with knowledge of its provisions and the extent to which it would affect their rights and liabilities.

5. MECHANICS' LIENS ⊕⇒14—NO SUBJECTION OF HOMESTEAD TO LIEN UNDER CONTRACT NOT EXECUTED IN COMPLIANCE WITH STATUTES.

Where a contract for improvements on a homestead was not executed in compliance with the statutes in reference to mechanics' liens on homesteads, it could not fix a lien for the improvements in favor of the contractor.

6. PRINCIPAL AND SURETY ⊕⇒9—BOND OF SURETIES FOR CONTRACTOR VALID THOUGH NOT FILED WITH CLERK BEFORE WORK WAS COMMENCED.

A building contract made under Vernon's Ann. Civ. St. Supp. 1918, art. 5623a, providing that such a contract shall guarantee the payment of materialmen's and laborers' liens regardless of whether or not secured by any lien, was valid, though the contract and bond were not filed with the clerk before the work was commenced.

7. PRINCIPAL AND SURETY ⊕⇒166—SURETIES OF BUILDING CONTRACTOR LIABLE TO OWNER FOR ATTORNEY'S FEES.

Under Vernon's Ann. Civ. St. Supp. 1918, art. 5623a, permitting materialmen and laborers to file suit to enforce payment and collection of the indebtedness due them, the suit being against the owner as well as the building contractors, the owner is entitled to recover his attorney's fees against the contractor's surety.

8. PRINCIPAL AND SURETY ⊕⇒132—SUBCONTRACTOR CAN SUE ON BOND IN DISREGARD OF RIGHT OF ACTION ON CONTRACT.

Under Vernon's Ann. Civ. St. Supp. 1918, art. 5623a, a subcontractor, suing the sureties for a building contractor, had the right to sue directly on the bond, and to disregard his right of action on his express contract.

9. MECHANICS' LIENS ⊕⇒317—OWNER'S CLAIM FOR DAMAGES FROM DELAY IN COMPLETION AND FOR ATTORNEY'S FEES MAY BE SET OFF AGAINST BALANCE DUE CONTRACTORS.

In suit between materialmen, subcontractors, and laborers against the owner, the contractors, and their sureties, though the contractors had assigned to their sureties any balance due from the owner, the court did not err in failing to render judgment for the sureties for such a balance, where the owner had a claim for damages from delay in completion and for attorney's fees, which claim might properly be set off in equity against his assigned obligation to the contractors.

10. MECHANICS' LIENS ⊕⇒317 — AMOUNT OF FEES PROPERLY SUBMITTED TO JURY IN SUIT OVER BUILDING CONTRACT.

In a suit by materialmen, subcontractors, and laborers against the owner, the contractors, and the latter's sureties, there was no error in submitting to the jury the question of the amount due the owner's attorney as attorney's fees which the owner was entitled to set-off against the balance due the contractors from him and assigned to the sureties.

11. DAMAGES ⊕⇒78(4)—BUILDING CONTRACT PROVISION FOR LIQUIDATED DAMAGES FROM DELAY VALID.

The provision of a building contract that the owner was to be allowed $5 a day for delay in completion as liquidated damages was valid, and for 91 days' delay the court should have instructed the jury to find for the owner in the sum of $455, in suit by subcontractors, materialmen, and laborers against the owner, contractors, and the latter's sureties.

Appeal from District Court, Lubbock County; W. R. Spencer, Judge.

Suit by the A. G. McAdams Lumber Company and others against L. B. Wright and others. From judgment for plaintiffs, defendants appeal. Reformed and affirmed.

Bean & Klett and Roscoe Wilson, all of Lubbock, for appellants.

M. Fulton, Percy Spencer, J. E. Vickers, W. H. Bledsoe, and W. F. Schenck, all of Lubbock, for appellees.

HALL, J. The appellee A. G. McAdams Lumber Company, a corporation, filed suit in the district court of Lubbock county against L. R. Hensley and G. L. Phillips, as contractors under the firm name of Hensley & Phillips, and against R. D. Benson, as the owner of certain buildings, including, as defendant, L. B. Wright and H. K. Porter as sureties upon the contractor's bond of Hensley & Phillips, to recover a balance of $2,727.85, alleged to be due appellee for material furnished the contractors to construct a residence, garage, and barn for the owner, R. D. Benson. It is alleged that the contract made by Benson bound the contractors to complete the work at a cost of $8,750 on or before September 1, 1917. T. T. Fisher, as a subcontractor, filed suit in the same court upon the same contract, to recover a balance of $535 alleged to be due him for plastering done for said contractors. The Cicero Smith Lumber Company, claiming a balance of $269.35 for material furnished; J. B. Pryor,

a subcontractor, claiming a balance of $656.-75 for concrete work; Nelson & Wilcox, sub-contractors, claiming a balance of $184.40 for painting; O. G. Kershner, a subcontractor, claiming a balance of $466.44 for brick and tile work; and Bush Bros., a partnership, claiming a balance of $415.95—all filed their pleas of intervention. The owner, Benson, by cross-action, prayed for penalty of $445 damages for delay in completing the work and $250 for his attorney's fees. The total amount of claims sued for by plaintiffs and interveners is $5,859.74. The suits were consolidated. Plaintiffs and interveners alleged, in substance, that on April 28, 1917, the owner, R. D. Benson, and the contractors, Hensley and Phillips, entered into a written contract, whereby the latter obligated themselves to construct a residence, garage, and barn for the owner, according to certain plans and specifications, at a price of $8,750, and to complete the work by September 1, 1917; that on the same date the sureties, L. B. Wright and H. K. Porter, executed a bond in the penal sum of $3,364, payable to the owner and those who may furnish labor and material, conditioned that the contractors will faithfully perform said contract and promptly pay and discharge all indebtedness that may be incurred by the said Hensley and Phillips in carrying out the said contract. Copies of the contract and bond were made exhibits to the pleading. The defendant Hensley filed a suggestion of his adjudication in bankruptcy. The defendant Benson answered, alleging that the premises in question had likewise been his homestead; that no lien had been created to secure any of the claims sued upon, and admitted that he lacked $1,187.56 paying the contractors for the work done, and claimed by way of cross-action the said sum of $445, as penalty for 91 days' delay in completion of the work, together with his attorney's fees. He further alleged that the contract and bond sued upon did not represent the contract and bond that were actually made, but were wholly different from the contract and bond executed by the parties originally. The sureties, Wright and Porter, allege that the contract and bond sued upon were not the instruments executed by the owner and the contractors, specifically alleging:

"(9) That the sureties say that the contract that was entered into between the parties with reference to the construction and completion of the buildings mentioned in said Exhibit A without the knowledge or consent of these sureties materially differ from said Exhibit A sued on, in that the real contract for the construction and completion of said buildings obligated the contractors to award the painting to Mr. Nelson, the plumbing to Bush Bros., the lumber and mill work to the Cicero Smith Lumber Company or the McAdams Lumber Company, and further obligated the contractors to begin work on the garage, not later than Monday, April 30th, and push same forward to comple-tion, or have same so it can be occupied as a place of residence in two weeks from above date; also to construct the stable as promptly as possible.

"(10) That these sureties say that they are not liable on the contract set up in Exhibit A or the bond given to secure it, and made a part thereof, in that the contract set up in said Exhibit A was materially altered, and an entirely different building contract entered into by the other parties hereto, by which the contractors, for a valuable consideration, assumed and promised to discharge the additional burdens and liabilities mentioned in the preceding paragraph, and these sureties say that these material alterations and additional obligations were incurred and entered into by and for the other parties hereto without the knowledge or consent of these sureties before delivery or acceptance of the contract or bond, and before any labor or material was furnished; that in fact these sureties have never signed any bond or obligated themselves in any way to become liable, as sureties or otherwise, on the contract, that was really made between the parties, and have never authorized, ratified, or acquiesced in such contract or bond, and the contract and bond sued on are, so far as these sureties are concerned, wholly void and without consideration to support it, whereby such sureties are not liable on the contract or bond sued on."

Upon special issues submitted to the jury, findings were returned, stating the amount due the several claimants who furnished material and labor. The jury further found that $200 was a reasonable attorney's fee; that the letter of April 28, 1917, signed by the owner and contractors, and made a part of the contract, was without the knowledge and consent of the sureties, and after the bond had been signed by them; that said sureties refused to have anything to do with the contract and bond after they learned of said letter; that by reason of the acts of the owner in making alterations the completion of the buildings was delayed 85 days; that the premises in question constituted the homestead of the defendant Benson. Judgment was rendered in favor of plaintiff and intervener against Phillips, one of the contractors, and Wright and Porter as sureties, for the several amounts found to be due. Benson was denied recovery of the attorney's fees, but was allowed $30 in the way of penalty for delay, which was credited on the amount admitted in his pleadings to be due the contractors. It was ordered that execution first issue against Benson in favor of plaintiffs and interveners, prorating the amount due from Benson upon the several amounts recovered by them, and that such sums, when collected, should be credited on the judgment rendered against the contractors and sureties. It appears that after the contract and bond had been signed and on the same day the following instrument was executed:

"Lubbock, Texas, April 28, 1917.
"Mr. R. D. Benson, Lubbock, Texas—Dear Sir: In connection with the execution of my contract

with you, for the construction of your residence, garage, stable, etc., I hereby agree to award the following work to the respective subcontractors as noted below:

"Painting to Mr. Nelson; plumbing to Bush Bros.; lumber and mill work to Cicero Smith or McAdams Lumber Co.

"I further agree to begin work on the garage not later than Monday, April 30th, and to push same forward to completion, or to have same so as it can be used as a place of residence in two weeks from above date. Also to construct the stable as promptly as possible. In connection with the shingles for garage, if it becomes necessary to size these shingles to dimensions, you are to pay for the cost of sizing same and the loss, if any, caused by such work.

"Yours truly,                    L. R. Hensley
                                 "G. L. Phillips

"It is agreed and understood that the price for all the tile work was estimated at fifty cents per square foot. Should this tile cost more or less than fifty cents per square foot, addition or deduction from the contract price will be so made.                    G. L."

Benson testified with reference to the letter as follows:

"As to whether or not that letter was signed by me on the 28th after the bond was signed by the sureties, I will say that I do not think that I signed the letter at all, but the letter was delivered to me with the contract and bond. The sureties had already signed the bond at the time the letter was attached."

Hensley testified with reference to the letter as follows:

"The contract and bond were written up, and I carried it out and had the bond signed by Mr. Porter and Mr. Wright, and after it was signed up by Mr. Porter and Mr. Wright as sureties, I then carried it back to the office, and Mr. Benson and Mr. Weathers [the architect] had an extra letter written, asking to give the painting, etc., to certain contractors, and to buy the lumber from those yards they mentioned to you, and agree to finish the garage and barn in a certain length of time so he could use it as a residence. They asked me to sign that letter and make it a part of the contract, and I then signed it. The letter was then attached to the contract. The letter was written in duplicate, and signed in duplicate, and I kept one of the duplicates, and I believe Mr. Benson kept one, and that was all at the time that the contracts were delivered. * * * The contract and letter was delivered as one transaction. I did not at that time show the letter to the sureties or inform them as to the contents of it. It was along in November or December, or something like that, that the sureties first learned of the existence of such a letter."

Weathers, the architect, testified in relation to the letter as follows:

"The letter was prepared by Hensley & Phillips and was a kind of joint suggestion between Hensley and Phillips and myself and Mr. Benson, as a means of obviating the writing of the contract in order to embody this agreement or understanding as to the special attention to be given to the construction of the garage and barn. The letter was written in duplicate.

One copy attached to the copy of the contract that was handed to the party of the first part and one copy was attached to the copy of the contract handed to the party of the second part."

The original contract and bond are made a part of the statement of facts; the contract being originally printed in blank upon one side of a sheet of paper and the bond, with blanks, printed upon the other. The contract, before the blanks were filled in, is in part as follows:

"This agreement made this ——— day of ———, A. D. 19—, between ———, contractors, parties of the first part, and ———, owner, party of the second part; witnesseth: That the said parties of the first part for and in consideration of the payments to be made to them by the said second party, as hereinafter provided, do hereby covenant, contract and agree to

according to the plans, specifications (which are declared to be a part of the agreement)," etc.

Two typewritten sheets of paper are pasted in the blank, which is about one inch wide clear across the sheet, between "agree to" and "according to," and read in part as follows:   '

"Furnish all labor and material of each and every kind to build and complete a one-story and a half frame residence, two-story frame garage, two-story frame stable, cistern foundation, trash bin, water trough, grape arbor; fences, walks, yard irrigation, plumbing, heating, wiring, etc., etc., all according to the addenda to original specifications, revised plans, and the following list of alterations: (1) Omit all base plugs and floor plugs."

This is followed by items, numbered (2) to (20), specifying changes, alterations, omissions, and additions to various items in the original plans and specifications, and relate to changes in the bathroom, refrigerator, drain, size of kitchen, closets, change in lumber for ceiling, size of built-in bookcases and certain windows and other minor matters. Without the two typewritten sheets, (designated in the briefs as "stickers") this part of the contract would read thus:

" * * * do hereby covenant, contract and agree to *All work to be done strictly* according to the plans, specifications," etc.

—the italicized part being typewritten in the blank space where the "stickers" are pasted. The uncontradicted evidence shows that the typewritten "stickers," making these changes and additions, were pasted upon the printed contract after it had been signed by Hensley & Phillips and Benson, and after the bond had been signed by the sureties, Wright and Porter. The contract was complete without the "stickers." It appears that Weathers, representing Benson, and Hensley and Phillips, are the parties who filled out the blank contract and bond, and attached the typewritten "stickers" to the contract, and at the

same time, or immediately thereafter, the letter of April 28th was written. The letter names certain subcontractors who are to do painting, plumbing, and to furnish lumber and mill work. It provides for commencing and completing the work upon the garage in order that it might be used as a temporary residence, and binds the contractors to also construct the stable as promptly as possible. All the stipulations contained in both the "stickers" and the letter come within the terms of V. S. C. S. (Supp.) art. 5623a, which provides that—

"No change or alteration in the plans, building, construction or method of payment shall in any way avoid or affect the liability on said bond."

[1] Appellee asserts that, if this is a material alteration of the contract, the sureties are estopped from urging such defense by the fact that they executed the bond with blanks to be filled, thereby binding themselves to all persons who furnished labor or material on any contract, which their principal might make with his implied authority to fill the blanks. As said in 1 R. C. L. p. 1012, § 45:

"Authority to fill blanks in an instrument need not be express, but may be implied, and, when fairly inferable from the conduct of the parties, and circumstances surrounding the transaction, is as effectual as if expressly conferred. This is an exception to the general rule that no authority from the maker to alter will be implied, and is of as frequent application as is the general rule itself. Such authority may be implied from circumstances and from the facts proved when these facts, all taken together and fairly considered, justify the inference. It is, after all, a mere question of assent, and assent by implication, when fairly and legally inferred, is actual and effective assent as much so as when direct authority is shown by parol. It seems very generally conceded that, where a person, intending to enter into an obligation, signs a paper containing blanks as to any particular, there is implied authority to fill all blanks in general conformity to the character of the paper."

The same rule is again announced in 21 R. C. L. p. 969, § 22, in this language:

"A surety who signs an incomplete undertaking and places in the hands of another to use for a particular purpose, and with ostensible authority to fill in any needed matter to make it effective, is estopped to controvert its validity to the prejudice of the obligee after it is accepted by him in its completed form and without negligence on his part. Sureties who sign an undertaking in blank are bound to know its contents, and that the blanks must be filled to make it accomplish the purpose for which it is intended. They cannot evade liability after it has been completed by filling such blanks, by pleading a want of such knowledge, unless prevented from reading it by some trick or artifice of the obligee."

The same rule is declared in 4 Elliott on Contracts, § 3497; 2 C. J. Alteration of Instruments, §§ 125–136; Brandt on Suretyship and Guaranty (3d Ed.) § 460; 32 Cyc. pp. 67, 68; Inhabitants of South Berwick v. Huntress, 53 Me. 89, 87 Am. Dec. 536; Drury v. Foster, 2 Wall. 24, 17 L. Ed. 780; Stone v. Brown, 54 Tex. 330; Palacios v. Brasher, 18 Colo. 593, 34 Pac. 251, 36 Am. St. Rep. 305; Burgess v. Blake, 128 Ala. 105, 28 South. 963, 86 Am. St. Rep. 107; Friend v. Ward, 126 Wis. 291, 104 N. W. 997, 1 L. R. A. (N. S.) 891, 110 Am. St. Rep. 924; Grovold v. Federal U. Surety Co., 212 Fed. 908. These authorities, and many others which might be cited, sustain appellee's contention, but they do not apply to this case because, as stated, the contract was complete as a binding obligation at the time the sureties signed the bond. It obliged the contractors, for a named consideration, to furnish all labor and material necessary to do the work, and construct the buildings according to the plans and specifications, within a stated period. It contains the usual collateral provisions with reference to payment upon the architect's estimates, subletting, insurance, written notice, etc. So the rule as announced in 2 C. J. pp. 1244, 1245, §§ 121, 124, to the effect that the law implies authority to fill blanks in a contract only when such insertions are necessary to make the instrument perfect and complete, according to its nature, frame, and intended use, applies. Since none of the matters mentioned in either the stickers or the letter tended to make it a new or different contract as originally executed, further than is authorized by the statute, the appellant's plea of non est factum was no defense. It will be noted that the article of the statute referred to further provides that "the sureties on said bond shall be limited to such defenses only as the principal on the said bond could make." It will not be contended that the principal, Benson, could urge either the defense of non est factum or alteration, when he was present and consenting to the changes, both in person and by his agent, the architect. It follows that in the light of the statute the jury's finding that the letter was a material alteration of the contract is erroneous. The first assignment is therefore overruled. Garrett v. Dodson, 199 S. W. 675; Tarkington Prairie Lodge v. Geo. W. Smyth Lumber Co., 214 S. W. 588.

[2] Appellant's second assignment attacks article 5623a, V. S. C. S. (Supp.), upon constitutional grounds. It is urged that the provision that "no change or alteration in the plans, building, construction or method of payment, shall in any way avoid or affect the liability on said bond" is in violation of the Fourteenth Amendment of the Constitution of the United States, in that it deprives the sureties of the right to contract, and denies them the equal protection of the laws. It cannot be contended that it deprives them of the right to enter into any legal contract, though it certainly denies them the right to

contract in such a way as to avoid that statutory provision.

[3, 4] Under the third assignment it is contended that the provision limiting the sureties to such defenses as the principal could make in a suit upon the bond is subject to the same objections. These questions have been often discussed in relation to usury statutes, statutes governing the sale of patent rights, and other like enactments, and in all of them the question has been settled adversely to appellant's contention. Hawkins v. Bleakly, 243 U. S. 210, 37 Sup. Ct. 255, 61 L. Ed. 678, Ann. Cas. 1917D, 639, American Indemnity Co. v. Burrows Hdw. Co., 191 S. W. 574, and Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556, where it is held that no citizen has a vested right in common-law remedies. When appellants signed the bond as sureties the article in question was operative and became a part of their contract. They are bound with knowledge of its provisions and the extent to which it would affect their rights and liabilities. 12 C. J. p. 973, § 553.

[5, 6] It is insisted under the fourth assignment that the trial court erred in rendering a judgment for the plaintiffs and interveners because the bond had not been filed with the clerk before the work was commenced.. Articles 5623 and 5625 prescribe the procedure necessary when it is attempted to establish a lien upon the property upon which the improvements are to be erected, and under these articles it is necessary for contracts to be filed. The improvements in the instant case were made upon a homestead, and the contract, not having been executed in compliance with the statutes in reference to mechanics' liens upon the homestead, could not fix a lien. This contract was made under article 5623a, V. S. C. S. vol. 2 (Supp.), which provides that such contract shall guarantee the payment of materialmen and laborers' liens, "regardless of whether or not they are secured by any lien." The failure to file such a contract with the clerk in no degree affects its validity. What is here said also disposes of the fifth assignment.

[7] The sixth assignment attacks that portion of the judgment awarding attorney's fees to the owner, Benson. The bond binds the sureties in the sum of $3,364, payable to Benson, conditioned that if the contractor "shall duly and promptly pay and discharge all indebtedness that may be incurred by the said Hensley & Phillips, in carrying out said contract, * * * as well as all costs, including attorney's fees in enforcing payment and collection of any and all indebtedness incurred by said Hensley & Phillips, in carrying out said contract, then the above obligation shall be void," etc. Since the statute permits materialmen and laborers to file suit for enforcing the payment and collection of indebtedness due them, and since the suit is against Benson as well as the contractors, for the purpose of enforcing the payment of their indebtedness, a reasonable construction of this term of the bond entitles Benson to recover his attorney's fees.

[8] Under the seventh assignment appellants complain that the court erred in submitting a special issue as to the amount due O. G. Kershner. The proposition urged is that, where a subcontractor sues for the value of labor and material, and not for the balance due on an express contract, and the evidence shows that the only claim he has is based on such contract, and that he has abandoned it without excuse, he is not entitled to recover. While the evidence may have shown that Kershner had an express contract, by statute he is given the right to sue directly upon the bond and disregard his right to action on the contract. Reference to the pleading shows that this subcontractor's petition is so framed that he could recover either upon his contract with Hensley and Phillips or upon the bond. The evidence shows the amount due him, and the court did not err in submitting the issue to the jury.

[9] The eighth assignment is:

"The trial court erred in not rendering judgment for the sureties, L. B. Wright and H. K. Porter, against the defendant, R. D. Benson, in that the uncontroverted evidence shows that the defendant Benson is owing to the contractor a balance of $1,187.56, less a deduction of $30 for delay allowed by the court, which balance has been transferred by the contractors to the sureties by an instrument in writing, and no evidence that the plaintiffs or interveners have ever acquired a right to any part thereof."

There was introduced in evidence what purports to be an assignment by Hensley & Phillips to Wright and Porter of the balance due them under the contract from Benson. This instrument is dated October 12, 1917. There was also introduced a letter of same date, addressed to Benson, signed by appellants, notifying him of the transfer to them of this balance. By a consolidation of the several actions and by pleas of intervention, the suit is one between materialmen, laborers, and subcontractors upon the one part against the owner, the contractors, and their sureties upon the other. By his answer the owner, Benson, admits that he has on hand the sum of $1,187.50, due under the contract, out of which amount he prays that he be allowed to retain his attorney's fees and damages, resulting to him, because of delay in completing the building, together with costs, and in his pleading tenders the balance into court, asserting his readiness to pay the same to the proper parties under the court's direction. He shows that on September 26, 1907, he notified appellants that certain bills for material and work had not been paid, and that as sureties he would expect them to see that the contract was performed, and requesting that they take such steps as they deemed necessary to see that the contractors complied

(218 S.W.)

with the contract, and paid all bills for labor and material. He further alleges:

"That recognizing their liability as sureties on said bond, said Wright and Porter did, on the 12th day of October, 1917, after the receipt of such notice from this defendant, have Hensley & Phillips transfer to them the balance due and to become due on said contract," and that they served him with notice of such assignment.

It is further alleged that all payments made upon said contract after September 26, 1917, were made either to said defendants Wright and Porter, or to other parties upon the written orders and request of said Wright and Porter, who as sureties on said bond expressly agreed that the payment of said account by said Benson will not in any manner affect their liability and obligation under said bond and contract; that on October 25, 1917, after said Wright and Porter had recognized said contract and bond and accepted payments thereunder, they were refusing to furnish the necessary material and workmen to complete said contract, and the architect issued the following certificate in writing, etc. Without setting out the pleadings of the respective parties further, suffice it to say that all the parties were necessary to a determination of the issues. Appellants Wright and Porter acquired, by their assignment, no greater right to the funds in Benson's hands than Hensley & Phillips had at the time of the assignment. With unsatisfied claims due materialmen and laborers for which suits had been filed against both the owner and contractors, it is clear Hensley & Phillips could not have required Benson to pay them the balance due. Having been made a party to the suits, Benson had a right to interplead all claimants of the fund, as well as the contractors and their sureties, and have the equities of all parties adjusted in the same action. Under the practice in this state every suit, when the facts justify it, assumes the shape of a bill in equity, and a court is not confined to a definite single judgment, but may adapt its decree to the circumstances of the case, and to offset one claim against another when they grow out of the same transaction. The materialmen and laborers were primarily entitled to pro rata satisfaction out of the funds in the hands of Benson, subject to his claims for damages and attorney's fees, and he was entitled to protection from a double recovery by making a tender of the proper amount into court. Hensley & Phillips, having by their bond guaranteed him against loss, were precluded from recovering against him this sum which he had a right to tender into court. It has been held in this state that, even where claims are evidenced by judgment, the power to set off a judgment obtained by a defendant against a plaintiff, though not conferred by statute, will be exercised by the courts in a proper case in the exercise of their equitable jurisdiction and powers. Such right, being purely equitable, is allowed, however, only where good conscience requires it. Dutton v. Mason, 21 Tex. Civ. App. 389, 52 S. W. 651; Simpson v. Huston, 14 Tex. 476. Since the court had all the claimants of the fund and all the parties to the suit before it, we think a proper judgment has been entered; and, while there is no specific decree in favor of appellants against Benson, for the balance in his hands, to which the contractors would primarily be entitled, this issue is disposed of by the judgment in distributing the fund to those who under the statute and the facts are entitled to recover it.

[10] There was no error in submitting to the jury the question of the amount due Roscoe Wilson as attorney's fees. First National Bank v. McWhorter, 179 S. W. 1147.

[11] The evidence is uncontradicted that there was a 91 days' delay in finishing the work, and that no claim was presented by the contractors at the time of the delay. There is neither pleading nor evidence tending to show a waiver by Benson of the delay or of the failure to present the claim. The contract provides that the owner is to be allowed the sum of $5 as liquidated damages for every day the work shall remain incomplete. It follows that the court erred in not instructing the jury to find in favor of Benson for the delay at the price agreed upon, or the sum of $455. Neblett v. McGraw & Brewer, 41 Tex. Civ. App. 239, 91 S. W. 309; Chapman & Co. v. Security Co., 149 Fed. 189, 79 C. C. A. 137; Simkins, C. & S. P. 698; 4 Elliott, Contr. § 3714, note 86.

The judgment is reformed so as to permit the recovery in favor of Benson of $455, damages for delay, and $200, as attorney's fees, and, as reformed, is affirmed.