**WILLIAMS et al. v. BALDWIN et al. (No. 182–3216.)**

(Commission of Appeals of Texas, Section A. March 2, 1921.)

**1. Contracts 289—Architects' refusal to issue certificates conclusive as between principal and surety.**

In owner's action on contractor's bond in which contractor's sureties claimed to have been discharged by owner's payments to contractor without certificates of architects in violation of the building contract the action of the architects in refusing to issue the certificates before contractor made such payments held conclusive as to contractor not being entitled thereto in absence of allegations of fraud, misconduct, or such gross mistake as would imply bad faith on the part of architects.

**2. Constitutional law 276—Mechanics' liens 312—Statute requiring owner to take bond from contractor held unconstitutional.**

Vernon's Ann. Civ. St. Supp. 1918, art. 5623a, requiring owner to take bond from contractor, held unconstitutional as an unwarranted interference with the right of contract.

**3. Principal and surety 117—Sureties discharged by owner's unauthorized payment.**

Payments by owner to contractor without certificates of architects without sureties' consent in violation of bond held to discharge sureties.

**4. Principal and surety 117—Sureties not discharged from liability to materialmen and laborers by owner's payments to contractor in violation of bond.**

Where contractor's bond taken by owner voluntarily and not in compliance with Vernon's Ann. Civ. St. Supp. 1918, art. 5623a, requiring owner to take bond, included materialmen and laborers as obligees, and was conditioned for the payment of claims for labor performed and material furnished, the sureties were not discharged from liability to laborers and materialmen by reason of owner's payments to contractor in violation of the bond unless materialmen and laborers knew of such violation at the time of furnishing the material and performing the labor.

**5. Mechanics' liens 313—Contractor's bond held to have been taken by owner voluntarily without statutory compulsion.**

Contractor's bond providing that, "in order to secure compliance by the contractors with each and all of his obligations and covenants, they have this day entered into bond, payable to the owner, in the sum of $5,000," held to have been taken by owner voluntarily and without statutory compulsion under Vernon's Ann. Civ. St. Supp. 1918, art. 5623a.

---

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Suit by A. P. Baldwin and others against R. F. Williams and others. Judgment rendered was affirmed by Court of Civil Appeals (202 S. W. 975), and R. F. Williams and others bring error. Judgments of district court and Court of Civil Appeals affirmed in part and reversed in part.

J. A. Ballock and Richards & Watkins, all of Athens, for plaintiffs in error.

Marsh & McIlwaine and Simpson, Lasseter & Gentry, all of Tyler, for defendants in error.

SPENCER, J. In consideration of the sum of $10,250, the Davis Construction Company, a copartnership, composed of F. B. Davis and J. D. McCullum, contracted in writing to erect for A. P. Baldwin, defendant in error, an apartment house in the city of Tyler, Tex. To secure its proper construction, a bond was executed with plaintiffs in error Williams, Patterson, and Underwood as sureties thereon, by the terms of which they obligated themselves to make good any default of the construction company.

On January 22, 1916, the construction company refused to proceed with the erection of the building, which fact was certified by the architects. Whereupon defendant in error Baldwin took charge of and completed the building at a cost to himself of $1,354.71 in excess of the contract price, and in addition there were various claims of materialmen and laborers unpaid amounting to $3,611.12 above the contract price.

Defendant in error Baldwin sued defendants Davis and McCullum and plaintiffs in error upon the bond for the amount thus paid out by him and joined as defendants in the action the materialmen and laborers whose claims were unpaid, and prayed that they be required to litigate their rights accruing under the terms of the bond against plaintiffs in error and Davis and McCullum.

The various materialmen and laborers answered seeking recovery upon the bond. Defendants Scott, Coleman, and Lydick and Books, composing the firm of Lydick Roofing Company, in addition to seeking recovery upon the bond, alleged compliance with the statute fixing a lien upon a certain lot belonging to Baldwin, which lien was sought to be foreclosed.

Plaintiffs in error resisted liability upon the grounds: (1) That the plans and specifications, which were made a part of the bond, required that all payments by Baldwin to the company should be made only when directed by the architects, and that the certificates were at no time to exceed 75 per cent. of the cost of labor and material placed in the building, and that, in violation of such provisions, Baldwin paid to the construction company the sum of $2,102.85 without architects' certificates, and that such payment was in excess of the 75 per cent. provision of the plans and specifications; and (2) that Baldwin changed the plans and specifications in divers and sundry manners without the knowledge or consent of plaintiffs in error, and that such acts on his part released them from liability.

Upon a trial before the court without the aid of a jury, judgment was rendered in favor of Baldwin against plaintiffs in error and defendants Davis and McCullum for the sum of $1,165.46; in favor of the various materialmen and laborers against plaintiffs in error and defendants Davis and McCullum for the amounts of their respective claims and in favor of the respective defendants asserting liens against defendant in error Baldwin foreclosing such liens upon the lot belonging to Baldwin. Plaintiffs in error alone appealed.

Upon appeal, the Court of Civil Appeals held that the provisions with reference to the architects' certificates were for the benefit of the owner and that he might waive that provision, and that, although the owner had paid the construction company without certificate or direction of the architects—the architects refusing to give such certificate, contending that the amount already paid equaled the 75 per cent. contemplated by the contract—and in contravention of the terms and specifications of the bond, such payments did not release the sureties on the bond. 202 S. W. 975.

The provisions of the plans and specifications which plaintiffs in error claim were violated read:

"That the sum to be paid by the owner to the contractors for the said work and material shall be $10,250, * * * and that such sum shall be paid by the owner to the contractors in current funds *and only on the certificate of the architects* [italics ours], no certificate to exceed 75 per cent. of the cost of labor and material satisfactorily in place in the building at the time of the issuance of such certificates."

The bond reads:

"Know all men by these presents: That we, the Davis Construction Company, of Athens, Tex., contractors, as principal, Davis Construction Company, consisting of F. S. Davis and J. D. McCullum, and R. F. Williams, R. W. Patterson, and H. F. Underwood, all of Athens, Tex., as sureties, are held and firmly bound unto Dr. A. P. Baldwin, of Tyler, Tex., owner, as well as to all persons, firms, and corporations who may furnish material for or perform labor on the work, building, or improvement contemplated in a certain contract mentioned, in the sum of five thousand dollars ($5,000.00), lawful money of the United States of America, well and truly to be paid to the said owner, Dr. A. P. Baldwin, of Tyler, Tex., and to such persons, firms, and corporations who may furnish material for or perform labor on the work, building, or improvement contemplated in the contract hereinafter mentioned, their heirs, ex-

ecutors, and administrators, jointly and severally, and for which payment we, the principal and sureties herein, do hereby jointly and severally bind ourselves, our heirs, executors, and administrators, firmly by these presents.

"The condition of this obligation is such that, if the said Davis Construction Company, contractors, of Athens, Tex., shall well and truly keep, perform, and fulfill, all and every, the covenants, conditions, stipulations, and agreements to be kept, performed, and fulfilled by them as set forth and contained in a certain contract entered into by and between the said Davis Construction Company, of Athens, Tex., as contractors, and said Dr. A. P. Baldwin, of Tyler, Tex., as owner, dated the 29th day of September, 1915, for the construction of the work, building, or improvement mentioned in said contract, and shall repay to the said Dr. A. P. Baldwin, owner, all sums of money which he may pay to other persons on account of work and labor done or materials furnished, which said Davis Construction Company, contractors, may fail to do or furnish in accordance with said contract, and shall pay to the said Dr. A. P. Baldwin, owner, any and all damages which he may sustain as provided in·said contract, or which he may be entitled to under the terms of said contract by reason of the malperformance or nonperformance on the part of the said Davis Construction Company, contractors, of any of the covenants, stipulations, and agreements of said contract on their part to be kept and performed, and if the said Davis Construction Company, contractors, shall promptly make payment to all persons, firms, and corporations, supplying them with labor and materials in the prosecution of the work provided for in such contract, then this obligation shall be void; otherwise to remain in full force and effect.

"This bond is made for the use and benefit of all persons, firms, and corporations who may furnish any material or perform labor for or on account of said work, building, or improvement, and they, and each of them, are hereby made obligees hereunder, the same as though their own proper names were written herein as such, and they and each of them may sue hereon."

The uncontradicted testimony of the architect, Bothwell, is that on January 8, 1916, he refused to issue any certificates to the Davis Construction Company for the reason that it had received all that it was entitled to receive under the contract. The court found that after January 8, 1916, Baldwin paid the persons and firms who furnished labor and material to the construction company the sum of $2,102.85, for which no certificates of the architects were issued.

While there is authority to the contrary, the great weight of authority is to the effect that a provision in a building or working contract that the contractor or builder shall be paid as the work progresses, according to the amount of materials furnished or work performed, upon certificates to be made by the supervising architect or engineer, whether a percentage is to be retained therefrom until the whole is done or not, redounds to

the benefit of the surety of the party who is to fulfill the contract, and upon payment being made in disregard of it there is such a departure from the contract upon which the undertaking of the surety is based that, as between the surety and principal, a nonconsenting surety is released. Fidelity & Deposit Co. v. Agnew, 152 Fed. 955, 82 C. C. A. 103; First National Bank of Montgomery v. Fidelity & Deposit Co., 145 Ala. 335, 40 South. 415, 5 L. R. A. (N. S.) 418, 117 Am. St. Rep. 45, 8 Ann. Cas. 241; Blackburn v. Morel, 13 Ga. App. 516, 79 S. E. 492; A. L. Morgan et al. v. Nathan Salmon, 18 N. M. 72, 135 Pac. 553, L. R. A. 1915B, 407.

"The purpose of such a stipulation," says the Third Circuit Court of Appeals in Fidelity & Deposit Co. v. Agnew, supra, "is to guard against the consequences of a default in case the principal contract proves a losing one, or the contracting party for any reason fails to comply, the percentage retained, where that is provided for, affording additional security; * * * and when not observed, and advance or overpayments are made, it is so obviously to the prejudice of the surety that it operates as a discharge as matter of law."

Defendant in error contends that, inasmuch as the trial court found, which finding was approved by the Court of Civil Appeals, that Baldwin at no time paid to or for the Davis Construction Company more than 75 per cent. of the amount of labor and material satisfactorily in place in the building, the payments by him without certificates of the architects, even though in violation of the terms of the contract, did not operate as a release of the sureties.

[1] The honorable Court of Civil Appeals upheld this contention upon the theory that the certificates of the architects are but evidence to the owner that the work and material in the building at the time are according to the plans and specifications, and, the certificates being for his benefit, he might waive the issuance of same and accept other satisfactory evidence, and that it would be presumed that the payment was upon satisfactory evidence. We do not agree to this conclusion. In the absence of pleadings challenging the action of the architects in refusing to issue the certificates upon the ground that they were guilty of fraud, misconduct, or such gross mistake as would imply bad faith, their action in refusing to issue the certificate is final and conclusive, as such certificates are more than mere evidence. G., H. & S. A. Ry. v. Henry & Dilley, 65 Tex. 685; Kilgore v. Baptist Ed. Society, 89 Tex. 465, 35 S. W. 145.

That the certificates of the architect are binding upon the parties unless impeached by fraud is definitely decided in the case of Kilgore v. Baptist Ed. Society, supra. It is there said:

"Under a firmly established rule of law, the parties having agreed upon the estimates of the

architect as the work progressed as the means of determining the extent of performance and the amount to be paid from time to time under the terms of the contract, such estimates, when made, established between the parties the fact found therein. *They were not merely evidence from which a court or jury might have found or ought to have found such facts, but were themselves findings of such facts by the architect, just as awards or judgments are findings of the facts of indebtedness therein stated by arbitrators or courts.* [Italics ours.] It needed no finding of the jury to establish the facts stated ·in the findings of the architect; and therefore it was proper for the court to instruct that the law presumed them correct in the first instance, leaving to the jury the question whether defendant had shown such facts as would destroy the findings of the architect. * * * The only question for the jury to pass upon with reference to such estimates was whether defendant was entitled to have them set aside and held for naught upon the issue of fraud presented by his answer. Unless he prevailed upon this issue, he was in law concluded by the estimates."

Defendant in error insists that the failure to comply with the contract with reference to making payments in accordance with the architects' certificates becomes immaterial because of the provision of Acts of the Thirty-Fourth Legislature, p. 223 (Vernon's Ann. Civ. St. Supp. 1918, art. 5623a), which requires the owner to take a bond from the contractor. The clause of the statute relied upon reads:

"No change or alteration in the plans, building, construction or method of payment shall in any way avoid or affect the liability on said bond, and the sureties on said bond shall be limited to such defenses only as the principal on said bond could make."

[2] Plaintiff in error contends that this statute, being an unwarranted interference with the right of contract, is unconstitutional. In the light of the disposition made of the case of Hess v. Denman Lumber Co., 218 S. W. 162, by the Court of Civil Appeals, declaring the act unconstitutional, and the subsequent refusal of a writ of error by the Supreme Court in that case, the contention should be sustained. The Court of Civil Appeals for the Seventh District, in the case of Wright et al. v. McAdams Lumber Co., 218 S. W. 571, held the statute constitutional. The latter case appeared as No. 11589 upon the application for writ of error docket, and the Supreme Court on December 8, 1920, in granting the writ of error, made this notation:

"The statute upon which we understand the Court of Civil·Appeals rests its decision was held unconstitutional in Hess v. Denman Lumber Co., 218 S. W. 162, by the Texarkana Court of Civil Appeals, in which No. 11569 was refused a writ of error. We think the statute is unconstitutional as an unwarranted interference with the right to contract, and for that reason grant the writ."

[3, 4] As between the principal and sureties, the sureties are, because of the violation of the terms of·the bond by the principal without their consent, absolutely discharged from all liability; but it is otherwise as to the remaining defendants in error as the bond named as obligees all persons, firms, and corporations who might furnish material for, or perform labor upon the building or improvement contemplated in the contract.

The rule is that, where the bond names the materialmen and laborers as obligees and is conditioned for the payment of claims for labor performed and material furnished, the sureties are not discharged from liability to persons furnishing labor and material by reason of the owner having made payments in violation of the bond unless they knew of such violation at the time of furnishing the material and performing the labor. Equitable Surety Co. v. McMillan, 234 U. S. 448, 34 Sup. Ct. 803, 58 L. Ed. 1394; 27 Cyc. 312, note 74; United States v. National Surety Co., 92 Fed. 549, 34 C. C. A. 526.

The reason for the rule, as stated in the authorities cited, is that the sureties are charged with notice that they are entering into a contract that will be relied upon by persons who can in no manner control the conduct of the owner; that, when the owner has executed the contract and taken and approved the bond, he ceases to be the agent of third parties whom the contractor employs in the execution of the work or from whom he obtains materials, and the rights of such persons are unaffected by the subsequent acts of the owner in violating the provisions of the bond.

[5] Had the provisions for the benefit of the materialmen and laborers been incorporated in the bond in compliance with and by force of the statute (article 5623a) which has subsequently been declared unconstitutional, the binding force of such provisions would be doubtful. Cleveland v. Clements Bros. Const. Co., 67 Ohio St. 197, 59 L. R. A. 775, 93 Am. St. Rep. 670. However, it is unnecessary to decide, and therefore we do not decide, that question. The owner had the right independent of any statute to require the bond and to demand the insertion of the provisions for the benefit of the materialmen and laborers. Article 11 of the contract provides that—

"In order to secure compliance by the contractors with each and all of his obligations and covenants, they have this day entered into bond, payable to the owner, in the sum of five thousand ($5,000.00) dollars."

To our minds, this provision of the article quoted excludes any presumption that the bond was taken and the provisions thereof incorporated in compliance with the statute. The act of the owner in taking the bond

was, we think, voluntary and without statutory compulsion.

We recommend, therefore, that the judgments of the district court and Court of Civil Appeals in favor of defendant in error Baldwin against plaintiffs in error be, reversed, and judgment rendered discharging them from all liability in so far as defendant in error is concerned, and that otherwise the judgments of said courts be affirmed.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.