CASE 66—PETITION ORDINARY—JUNE 6.

# East Tennessee Telephone Company v. Simm's Administrator.

APPEAL FROM HARRISON CIRCUIT COURT.

1. PLEADING—DEATH BY WRONGFUL ACT.—In an action under the provisions of section 241 of the Constitution seeking damages for death by negligence or wrongful act—that section being in force at the time of the loss of life, though the legislature had not then provided how the recovery in such cases should go and to whom it should belong—the personal representative of the deceased has a right of action without regard to whether the deceased left a widow or child or not; and the petition was good without alleging there was such widow or child.

East Tennessee Telephone Co. v. Simm's Admr.

2. SAME.—The provisions of that section (241) gave a right of recovery to the personal representative in any event, and only left to the legislature the mere distribution of the recovery.

3. PLEADING—COMPENSATORY DAMAGES.—Such a suit where recovery is sought for the death of plaintiff's intestate, caused by the "willful, gross and reckless negligence" of the defendant, is not an action for willful neglect, the word willful being manifestly used as the synonym of "gross;" and an instruction as to compensatory damages was properly given.

4. EVIDENCE—ADMISSIONS BY SECRETARY OF CORPORATION.—A letter from a secretary of a corporation, written after the transaction occurred, which is the subject of the suit, and making damaging admissions against the company, was not competent evidence; and even if otherwise competent, it contained a mere opinion based on hearsay, as the writer had no personal knowledge of the facts.

J. Q. WARD FOR APPELLANTS.

1. Where there is an undenied allegation of notice of danger and that the deceased knew of it and put himself in the way of said danger no damages can be recovered. (Derby Adm'r v. K. C. R. R. 9 L. R., 154.)

2. An act of a servant or agent, though evidencing negligence can not amount to willful negligence by co-operating with another negligent act of another servant of the same master, which latter act was unknown to the agent or servant at the time the negligent act complained of was done. (K. C. R. R. v. Sommer's adm'r, 7 L. R., 818; L. & N. R. Co. v. Brice, 8 L. R., 271; Collins v. C., N. O. & T. P. Ry. Co., 13 L. R., 670.)

3. Where the charge of willful negligence is not sustained, evidence of contributory negligence is admissible.

4. An action under section 3 of chapter 57, General Statutes, can not be maintained without alleging that the intestate left a wife or child. (Hennings v. Louisville Leather Co., 11 L. R., 544.)

5. Sections 1 and 3 of article 1 of chapter 57 of General Statutes were not repealed by section 241 of the Constitution. (Wright v. Wood's adm'r 16 L. R., 338-9.)

6. In an action against a telephone company for the death of plaintiff's intestate, alleged to have been caused by defendant's negligence in allowing a 'dead wire" to remain for two years close to an electric light wire, it is error to admit in evidence a letter written by defendant's secretary to the effect that said "dead wire" was the cause of his death.

WARD & LAFFERTY FOR APPELLEES.

1. A letter written by defendant's secretary after the death of plaintiff's intestate, showing that the "dead wire" caused his death, is competent evidence.
2. Compensatory damages can be recovered by an administrator for the death of his intestate caused by defendant's negligence under section 241, Constitution.
3. It is not necessary in an action under section 241 of the Constitution by an administrator for the death of his intestate, to allege that intestate left a wife and child.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The appellee, as administrator of Richard Simms, recovered judgment against the appellant for $7,000 in damages for the death of his intestate, which was caused, it is alleged, by the willful and gross negligence of the appellant and the electric light company. Briefly stated, the facts are that in 1887 the appellant, then operating a telephone system at Cynthiana, put up a wire from its central office in that city to the residence of W. T. Handy, about one mile out. On December 13, 1892, this wire was still in use by Handy, or in condition for use, under his lease or contract with the company, though, it appears that he was away, with his family in Florida, and his term of rental was out, or about out. Simms, as a tenant, occupied two rooms in the rear of the Handy residence, and, for purposes of protection, overlooked the premises. At about 10 o'clock on the night of the 13th, the family of Simms heard a noise in front of the residence, and, in company with his son and two nephews, he went around to the front porch with a lantern. They discovered the storm doors swaying back and forth, and, fastening them, they came down from the porch on to a pavement, when sparks were seen on some trellis wires about the porch. Simms stepped off the pavement, saying, "What is that?" at the same time reaching out

towards the wires.  His nephew exclaimed, "Don't touch it!"  But at that instant Simms fell dead, and it is supposed that he had touched the wires with his outstretched hand, although there were no burns found on his hands or body. These wires had become charged with electricity from contact with the telephone wire leading from the box in the hall on to the porch, and thence to the ground.  And the telephone wire had, in turn, become overcharged from contact with the electric light wire within the city.  Just how this came about forms the chief ground of dispute in this record.  It appears that some two years prior to the night in question the telephone company had discontinued a wire theretofore rented to Victor & Whaley, and this wire had been taken down, save a few hundred feet which had been left on the poles.  One end of this "dead wire" was connected with the Handy wire, and the other was fastened to a bracket on a pole of the Western Union Telegraph Company, also in use by the light company. This bracket became loose, and turned down, and the dead wire was left to sway and vibrate, sometimes touching the light wire.  On the evening in question there was a heavy wind, and some rain, and at about 5 o'clock the bracket was so shifted that the two wires were brought in contact, the one perhaps resting on the other.  The current of the electric plant had been turned on at about 4:30 o'clock that evening, and a disturbance was noticed at the central office of the telephone company between 5 and 6 o'clock, when the wire in the keyboard was burned.  An investigation made at once seems to have located the cause of the disturbance on the Handy wire, but there the matter rested for the night.  The effort of the plaintiff was directed to showing negligence on the part of the telephone company in

allowing its dead wire to hang for so long in close proximity to the light wire, and in so putting up the wire at the residence of Handy as that it could come in contact with the trellis wires then about the porch. Without setting out the details of the proof, it is sufficient to say that it conduced to show negligence in the particulars mentioned; and the court therefore properly overruled the appellant's motion for peremptory instructions upon the conclusion of the plaintiff's proof. Such a motion, however, was sustained for the light company. The appellant attempted to show that it had kept up the usual inspection of its line, and had no reason to apprehend danger from the dead wire remaining on the poles; that the trellis wires were so placed by Handy, or others over whom it had no control, as that connection with its wire was made without its knowledge or consent; and, moreover, that the deceased was the subject of heart disease, and likely to die suddenly, under undue excitement, and that he had probably died from natural causes, and not from an electric shock. The jury found against these contentions, and 'we proceed to notice the errors of law complained of.

And first it is insisted that the petition was fatally defective, in that it failed to allege that the intestate left a wife or child. We are of opinion that this was not necessary. Const, section 241, provides that "whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death, from the corporations and persons so causing the same. Until otherwise provided by law, the action to recover such damages shall in all cases be prosecuted by the personal representative of the deceased person. The general assembly may provide how the recovery

shall go and to whom belong; and until such provision is made the same shall form part of the personal estate of the deceased person." This section was in force when Simms lost his life, though the legislature had not then provided how the recovery should go, or to whom it should belong. It was wholly immaterial, therefore, whether there was, or not, a widow or child. It is true that under the old statute (Gen. St. c. 57, section 3), providing for a recovery where death was caused by "willful neglect," it had been held more than once that no recovery could be had unless the deceased left a widow or child; but it seems probable, as held in Wright v. Woods' Adm'r, 96 Ky. 56, that the constitutional provision had in view the correction of this supposed defect in the law, and gave a right of recovery to the personal representative in any event, leaving to the legislature the mere distribution of the recovery. And it is true that in Wright v. Woods, where the recovery had been effected in a suit under the old statute on "willful neglect," this court held that the distribution should be made under that statute, and to this extent the old statute was said to be still in force, or was until in July, 1893, when the present statute on the subject was adopted. The provision of the constitution (section 241) authorizes a recovery for death resulting from negligence, including all supposed degrees of it, and was intended to abrogate the further use of the words "wilful neglect" in our law. The present statute follows the constitution, and nowhere uses those words, but does provide that if the "negligence" is gross, or the "wrongful act" by which death is caused is willful, punitive damages are recoverable. The words "wrongful act," of the constitution, and "willful act," of the statute, do not primarily refer to an act of negligence, which is the opposite of

those terms.  The word "gross," when used to qualify the word "negligence," is a relative one, and is supposed to emphasize merely the want of due care and negligence, as "gross" or "ordinary," according to the circumstances, relations, and conditions under which due care is omitted to be exercised.  In this case there appears to have been no intention of conforming the petition to the old statute.  It is not a suit for "willful neglect," but recovery is sought for the death of the plaintiff's intestate, caused by the "willful, gross, and reckless negligence" of the company, the word "willful" being used, manifestly, as the synonym of "gross."  The demurrer to the petition was therefore properly overruled.  It follows from what we have already said that compensatory damages were recoverable in the action, and hence there was no error, as is insisted by counsel for appellant, in the instruction authorizing such recovery. The case relied on, of Railroad Co. v. Privitt's Adm'r, 92 Ky. 223, was one under the old statute, and it was held that, unless "willful neglect" was shown, no recovery could be had.  We perceive no error to appellant's prejudice in any of the instructions given.

The court, however, committed a serious error, to the prejudice of the company, in permitting the alleged letter of Mrs. Lake to Handy to be read as evidence.  She was the secretary of the company, it is true, but she was not its agent in making damaging admissions after the transaction occurred in which Simms lost his life.  Railroad Co. v. Ellis' Adm'x (Ky.) 30 S. W. 979.  The letter was to the effect that the dead wire caused Simms' death, and completely silenced the company's contention that Handy's trellis wires were placed in contact with the telephone wire without its knowledge, and thus caused his death, or contributed to it, or

that his death was due to natural causes. Moreover, if otherwise competent, it must have been mere opinion, based on hearsay, as the writer had no personal knowledge of the facts, though the statement, coming from one connected with the company, had the force of an absolute admission, and one fatal to the company's defenses. For the reason indicated the judgment is reversed, for proceedings consistent with this opinion.