ROSA T. PARR, Respondent, v. ILLINOIS LIFE INSURANCE CO., Appellant.

Kansas City Court of Appeals, February 16, 1914.

1. **LIFE INSURANCE: Payment of Premiums: Evidence: Declarations of Agent.** Plaintiff sued on a policy of insurance on the life of her husband. The defense was failure of insured to pay the last premium whereby the policy lapsed. Plaintiff claims that this premium was paid to an agent of the company. *Held,* that evidence of certain declarations of the agent as to such payment, not made as a part of the transaction, with deceased was inadmissible.

2. ———: ———: ———. Declaration of an agent, to be admissible against the principal, must be made as a part of the very work he is transacting under authority of his principal.

They are admissible not on the theory that they are admissions made by the principal through his agent, but on the theory that they are a part of the act done by the agent in behalf of his principal and explain or determine the quality of that act and are, therefore, as binding on the principal as the act itself. They are admissible because they are a part of the thing done and to which the declarations relate.

3. ———: ———: ———: **Same Transaction.** Two witnesses testified that about four o'clock in the afternoon they were present and heard the insured and defendant's agent talking about the former's insurance premium; that the agent told the insured that he had paid a premium then past due but that the next one would be due soon; that insured replied, "I know that. I have the money and will just pay it;" that thereupon the insured paid the agent a roll of bills which the agent put in his pocket, and the agent then wrote out what witnesses supposed was a receipt and handed to insured, remarking at the time, "This will carry your insurance now for over a year." This was admissible since the act and the declaration accompanying it were parts of the very transaction in controversy. That night after supper the insured and the agent got out the policy and some discussion and explanation was made by the agent to the insured, and at the close of the discussion, the agent said to the insured, in the presence and hearing of the plaintiff, "This pays your insurance all up, and you won't have to bother with it any more for a long time." *Held,* that there was room for the inference that the discussion was a resumption of the transaction had in the afternoon, that they were parts of the same transaction notwithstanding the interval of time between them, and that the declaration was admissible.

Appeal from Jackson Circuit Court.—Hon *E. E. Porterfield,* Judge.

REVERSED AND REMANDED.

*Henry W. Price* and *Harkless, Crystler & Histed* for appellant.

*Wade & Wade* for respondent.

TRIMBLE, J.—In the second count of her petition plaintiff sued upon a policy of insurance issued by defendant to Elisha V. Parr for $1000, payable at his

death to plaintiff as his widow and beneficiary. The annual premium thereon was $60.43 and was due on the 17th of June of each year. The first premium was paid; the second premium fell due on June 17, 1908. The insured gave his note to defendant for this premium. The next premium would, of course, become due June 17, 1909. A short time before this due date of the next premium, to-wit, about May 17, 1909, defendant sent its agent out to the insured's place of residence in Johnson county, Kansas, to collect the note and to attend to other business for the company in that community, such as collecting premiums, taking applications for insurance, applications for reinstatement, etc.

It is the contention of plaintiff that this agent came to the insured's house twice on that trip, once on May 17th when the insured, *by check,* paid the note given for the second premium, and again on May 19, 1909, when the insured paid him *in cash* the third premium which would be due June 17, 1909. If Parr paid this third permium to the agent, then his insurance was in force until June 17, 1910, and was in force on the date of Parr's death which occurred June 13, 1910. Defendant contends that, while Parr paid the note given for the second premium, yet he never paid the third premium in cash or in any other manner, and that the policy had lapsed at the time of his death. The whole contest is over the alleged payment of this third permium which would fall due June 17, 1909. The defendant insists that all the testimony introduced ·by plaintiff to prove the payment of said premium to said agent was improper and should not have been admitted. If that contention is true, then there is no other testimony in the case proving such payment and plaintiff, in that event, cannot recover.

The court refused to exclude the testimony objected to, and submitted to the jury the issue whether or not the premium was paid to the agent. The jury

found for plaintiff for the amount due on the policy, and defendant has appealed.

It was clearly shown and is conceded that George Withers was defendant's agent sent for the purpose of collecting premiums, obtaining applications for new insurance, applications for renewals and other business of the company in the community in which the insured Parr lived. There was evidence tending to show that on the 17th of May, 1909, this agent collected of the insured, Parr, the note given for the second premium, and that Parr paid this note by check of that date on the State Bank of Stilwell, Kansas. At that time, May 17, 1909, the third premium was nearly due, being payable on June 17th. After collecting the note, the agent went about the neighborhood attending to the business of the company. There was evidence tending to show that on May 19th, two days after collecting the note for the second premium, the agent Withers returned to Parr's residence. On this occasion a neighbor, James B. Kentch and his niece, Miss Myrtle Kentch were present. Plaintiff offered their testimony to prove that Parr, at this time, paid the third premium in cash. Defendant objected to their testimony and now claims that its admission was error.

James B. Kentch testified that he was at Mr. Parr's May 19, 1909, fixing the date by the date of a note he gave next day to the agent Withers at Stilwell for the next premium due on his policy. He says that the agent Withers, and the insured, Mr. Parr, were present. After testifying to some remarks made which are not pertinent here, Mr. Kentch says he heard Mr. Parr and the agent Withers talking about insurance premiums; that Mr. Parr said he had paid a premium, and Mr. Withers replied to Mr. Parr that he had paid his last premium but that another would be due soon; that Mr. Parr said he knew that and remarked, "I have got the money and I will just pay it;" that thereupon Mr. Parr took a roll of money in bills out of his

pocket and paid Withers some amount over $50, "and Mr. Withers wrote something on a receipt—looked like a receipt book, and wrote him out a receipt. I suppose it was, I don't know whether it was a receipt or not, but I did not see that. But I seen him writing it and hand it to Mr. Parr. And he says, that will carry your insurance now for over a year." Mr. Kentch further testified that Withers put the money in his pocket and that no check was asked for or given. This testimony was corroborated by Mr. Kentch's niece, Miss Myrtle Kentch, a young lady 16 years of age, who was present. The transaction occurred about three or four o'clock in the afternoon.

There was also offered the testimony of plaintiff herself, Mrs. Parr, to the effect that on the day Kentch and his niece were at her husband's farm, Mr. Parr invited the agent Withers to stay all night; that Withers accepted the invitation and that night after supper, while she was attending to her household duties, Withers and her husband got out the latter's insurance policy and spent some time going over and discussing it and other insurance papers in connection with it; that she did not know what feature of it they were discussing but that when Withers had finished explaining something to Mr. Parr about it to the latter's satisfaction, Mr. Withers remarked to her husband, "This pays your insurance all up and you won't have to bother with it any more for a long time."

Plaintiff then offered various neighbors of Mr. Parr who testified that Withers, thereafter and while still in the community on that trip and engaged in collecting premiums and other business of the company, stated to them that Mr. Parr had paid his insurance up to the year 1910, which meant, of course, that the premium due June 17, 1909, had been paid.

Plaintiff also offered the testimony of Joseph W. Parr, a brother of the insured, that on June 14, 1910, three days after his brother's death, he was in the de-

fendant's branch office in Kansas City (its head office being in Chicago), and had a conversation with Guy Withers in charge thereof. Policies of insurance issued by defendant were delivered through this office and it attended to the business of collecting premiums due thereon. Guy Withers was a brother of George Withers, the agent who is alleged to have collected the third premium in cash and both officed at the same place. The conversation, above referred to, between Guy Withers and Joseph W. Parr was to the effect that he, Joseph W. Parr, inquired of Guy Withers if his brother's policy was in force; that Withers replied he believed it was and turned to the lady bookkeeper, Miss Bryan, and asked her if it was. He was not allowed to tell what Miss Bryan's reply was. But he testified that Withers went to Miss Bryan and talked with her and then returned and said to Joseph W. Parr: "Joe, I am glad your brother's policy is in force, that is what life insurance companies are for. I am glad of it." No proof was made showing what authority Guy Withers had nor what particular duties he had to perform, save that he was agent for the company.

Defendant objected to the introduction of all the evidence hereinabove outlined, but the objection was overruled. We agree with defendant that the overruling of some of these objections was error, but we do not agree with the view that all of such evidence was inadmissible and that plaintiff had no competent evidence upon which to go to the jury.

The rule against admitting the statements or declarations of an agent, unless made in doing an act within the scope of his authority, is well known. The difficulty is in making an application of the rule. The declarations of an agent, relied upon to bind the principal, rest upon a different footing from admissions offered to bind the person making the admission. Every one has the legal right to make an admission

against himself whether true or not, and he has no right to complain of the use of such admission as binding upon him. But he ought not to be held responsible, on this principle, for admissions made against him by an agent, unless those admissions or declarations are made as a part of the very work or business he is doing or transacting under authority of his principal. [Hannay v. Stewart, 6 Watts 487.] In such case they are not admissible upon the theory that they are admissions made by the principal through his agent, but on the theory that they are a part of the act done by the agent in behalf of his principal and explain or determine the quality of that act and are therefore as· binding on the principal as the act itself. In other words, they are admissible because they are a part of what the courts (for want of a better term), call the *res gestae* i. e. the things done or the transaction carried out, and to which the admissions relate. [McDermott v. Railroad, 73 Mo. 516, l. c. 519; Atkinson v. American School of Osteopathy, 240 Mo. 338; Carson v. St. Joseph Stock Yards Co., 167 Mo. App. 443.]

Applying this rule to the case at bar, the evidence of the declarations by George Withers to the various neighbors and others who testified to them, made after the transaction with Parr was over, were not admissible as admissions against the defendant. The fact that the declarations of the agent were made while he was yet in that locality and engaged in collecting premiums from others for which purpose he was sent on that trip by the company, does not affect the matter. The declaration, to be admissible, must be a part of the transaction to which it related. For the same reason the declarations made by Guy Withers in the office at Kansas City were not admissible. It is true George Withers denied that the money for the third premium was paid him but this did not cure the error; nor were the admissions made by him to the neighbors offered

for the purpose of contradicting or impeaching his testimony that he never received the money, since the declarations were offered in evidence before he testified.

But we do not agree with defendant that the evidence of plaintiff as to the declaration made by George Withers to her husband, the insured, that night after supper was inadmissible. Her testimony is that the two men were talking over the policy now in suit and had it and the other papers in connection therewith before them; that as they were concluding the transaction, the agent remarked to Mr. Parr: "This pays your insurance all up and you won't have to bother with it any more for a long time." It is true, Mrs. Parr does not know what it was they were discussing about the policy, but there is room for the inference that it was in refrence to the premium due from the insured and the amount thereof and the effect of the payment made by him and whether it was correct or not. It is true Mr. Parr had, according to plaintiff's witnesses James and Myrtle Kentch, paid the premium about four o'clock that afternoon, and that particular part of the transaction could, in a sense, be said to have ended. But there was nothing to prevent the agent and Mr. Parr from reopening the transaction or to take it up again where it was left off when the money was paid. If, after the money was paid, there was something about the transaction which Mr. Parr wanted to clear up, or make sure of, or inquire about, it was still as much a part of the agent's business to explain it and answer all reasonable inquiries in relation thereto as it was to receive the money. And it would be a part of the same transaction too. The fact that a few hours intervened between the two parts of the same transaction would not matter. [1 Greenleaf on Ev. pp. 141-2; Mechem on Agency, Sec. 715.] The evidence was, therefore, properly admitted.

It will not do to say that Withers had no authority to collect premiums not yet due. He was collecting premiums due and not yet due, and admits that he tried to collect the one not yet due from Parr. This one was due in a few days and Withers was there collecting premiums and taking applications and securing reinstatements or applications therefor which were afterwards ratified and confirmed by the company. It is true, by the terms of Parr's note for the second premium, the policy lapsed if the note was not paid at maturity. This note fell due in October and was not paid until May following, but the company accepted from Parr an application for reinstatement, obtained by Withers when the note was paid, and ratified and approved Withers' act by formally reinstating Parr, thus waiving the effect of not paying the note at maturity. If Withers had authority to collect the note and to take from Parr an application to be reinstated the same as if the note had been paid when due, then certainly he had authority to collect the premium (which was almost due) necessary to preserve the insurance in force under the reinstatment. Withers was a brother of Guy Withers in charge of the defendant's office or branch agency in Kansas City. Both George and Guy Withers were in that office and Parr knew that. And the evidence was that premiums on policies delivered by that office were collected by and sent to that office. Certainly Parr had a right to infer that as George Withers had a right to collect past due premiums and to take applications for new insurance and for reinstatements, he had authority to collect a premium although not due for a few days. The payment of a premium is usually made before it becomes due and is on a different basis from a payment made on a note before it falls due.

The evidence of James Kentch and his niece as to the actual payment of the cash by Parr to the agent Withers was admissible since it was testimony of an

act done by the agent in performing the very transaction in controversy. And their evidence as to the declaration of the agent, made at the time of receiving the money, was also admissible since the declaration was a part of the *res gestae* and was explanatory of the act.

The case, therefore, must not be reversed outright, but must be reversed and remanded for a new trial. It is so ordered. All concur.