## SOUTHERN SURETY CO. v. NALLE & CO. et al. (No. 321–3661.)

(Commission of Appeals of Texas, Section A. June 12, 1922.)

**1. Evidence ⬅244(2) — Declarations of agents, not within the scope of their authority and contemporaneous with the act, inadmissible.**

The ordinary rules governing the admissibility of declarations by an agent are applicable to agents of corporations, whose declarations, to be admissible against the corporation, must be made within the scope of their authority while acting for the corporation, and contemporaneous with the act.

**2. Evidence ⬅244(2)—Declarations of executive officers are subject to same rules as other agents.**

The competency of executive officers of a corporation, as evidence against the corporation, are subject to the same rules as govern the competency of declarations of other agents, though the scope of authority of such officers is necessarily much broader than that of other agents.

**3. Evidence ⬅244(11)—Declarations of general agent of surety company made on hunting trip held incompetent.**

In an action against the surety on a contractor's bond, declarations made by the general agent of the surety company to the architect of the building while they were on a hunting and fishing trip, to the effect that he knew of a change in the contract whereby an additional story was to be put on the building, and that in such case his company required an additional premium, related to a past transaction, and was not made while the agent was acting for the company, so that such declaration was not competent evidence against the company.

**4. Trial ⬅396(5)—Incompetent evidence admitted without objection does not support finding.**

Evidence which in itself was wholly incompetent, and therefore without probative force, gains no vitality because admitted without objection, and it will not support a finding of fact by the court.

**5. Appeal and error ⬅931(6)—Finding expressly based on incompetent evidence cannot be presumed to have been based on other competent evidence.**

Where the trial court expressly based its finding that a surety company had knowledge of the change in the principal contract upon a declaration by the surety company's agent which was not competent evidence against the company, it cannot be presumed that the finding was based upon other competent evidence to that effect, but the judgment against the surety must be reversed and the cause remanded, not to the Court of Civil Appeals for additional findings of fact, but to the district court for another trial.

**6. Principal and surety ⬅43—Bond, wrongfully demanded under color of official authority, is void for duress.**

Where a bond is wrongfully demanded under color of official authority, or as a condition to some act, privilege, or benefit to which the maker is entitled without giving bond, such bond, if given, will be held void for duress.

**7. Bonds ⬅35—Voluntarily entered into is good at common law, whether required by valid statute or not.**

The general rule is that a bond, whether required by a valid statute or not, is good at common law if entered into voluntarily and for a valid consideration, and if not repugnant to the letter or policy of the law, so that a bond executed in pursuance of a statute is not necessarily void because the statute is afterwards declared unconstitutional.

**8. Mechanics' liens ⬅313—Facts held to show contractor's bond was not entered into under duress of unconstitutional statute.**

In view of the ordinary custom of requiring a bond of a building contractor, so that payments on the contract price may be made as the work progresses, a bond given by such contractor. which contained no reference to Vernon's Ann. Civ. St. Supp. 1918, arts. 5623, 5623a, requiring the contractor to give such a bond, and the owner to exact it, and which had been held unconstitutional as an unwarranted interference with liberty of contract, which bond was not attacked by the surety or contractor as having been executed under duress of the statute, is valid as a voluntary common-law bond, though it was conditioned in the language of the statute.

**9. Principal and surety ⬅100(1)—Persons furnishing material without knowledge of change in principal contract releasing surety can recover from surety.**

Materialmen who furnished material for a building without knowledge at the time they furnished such material that the surety of the contractor had been released because of changes in the principal contract without the surety's knowledge or consent, can recover for such material from the surety.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Suit by Nalle & Co. against the Blazilmar Hotel Company, the Southern Surety Company, and others to recover for material furnished in building a hotel, and to foreclose a materialman's lien in which other materialmen and subcontractors intervened. A judgment allowing recovery by numerous materialmen and subcontractors and by the hotel company against the contractor and against the Southern Surety Company as surety on the contractors' bond was affirmed by the Court of Civil Appeals, 231 S. W. 402, and the Southern Surety Company brings error. Reversed, and cause remanded to the district court for another trial.

· Hart & Patterson, of Austin, and Barrett, Eskridge & Barrett, of San Antonio, for plaintiff in error.

Brooks, Hart & Woodward, of Austin, Mantor & Briggs, of Taylor, Fiset & Shelley, and W. A. Barlow, all of Austin, and W. D. Caldwell, of Fort Worth, for defendants in error.

GALLAGHER, J. This suit was instituted by Nalle & Co., one of the defendants in error, against the Blazilmar Hotel Company, Howard Bland, T. W. Marse, A. J. Zilker, the Capitol City Building Co., John W. Hood, and F. J. Strassel, defendants in error, and Southern Surety Company, plaintiff in error, to recover the sum of $5,107.25 for material furnished in building the Blazilmar Hotel in Taylor, Tex., and for the foreclosure of materialman's lien on the hotel property. Various subcontractors and other materialmen intervened as hereinafter shown. The case was tried before the court without a jury, and judgment rendered in favor of the plaintiff, interveners, and defendant Hotel Company against the defendant Capitol City Building Company, John W. Hood, and Southern Surety Company for the indebtedness established by each as hereinafter shown.

The Southern Surety Company alone·appealed. The Court of Civil Appeals in a majority opinion sustained the trial court in rendering such judgment, and affirmed the same. 231 S. W. 402. The Southern Surety Company obtained a writ of error. The Court of Civil Appeals made findings of fact, which, so far as they are uncontested in this proceeding, are as follows:

"On March 23, 1917, Howard Bland, T. W. Marse, and A. J. Zilker, hereinafter called the 'owners,' entered into a contract with John W. Hood, John W. Hood, Jr., F. J. Strassel, and F. Greenwell, composing the ·Capitol City Building Company, hereinafter referred to as the contractors, for the erection of a three-story fireproof hotel building, on certain lots in the town of Taylor, Williamson county, in accordance with plans and specifications drawn by Henry T. Phelps architect, for the sum of $47,825. The contractors were to provide and pay for all material and work done, and complete the building in 125 days. Payments to the amount of 85 per cent. of the work done and material placed on the ground were to be made on the 1st and 15th days of each month, as the work progressed.

"Of even date with the contract, the contractors executed to the owners a bond, in the sum of $23,912.50, with the Southern Surety Company, hereinafter referred to as the 'surety company,' as surety, conditioned for the faithful performance of the contract, and specially that those who furnish material for or perform labor thereon should be paid for same, and might bring suit thereon as though specially mentioned therein. F. M. Coleman, of San Antonio, was the general agent of the surety company. The contractors entered at once upon the performance of their contract.

"On May 10, 1917, the owners formed a corporation, under the name of the Blazilmar Hotel Company, hereinafter called the 'hotel company,' and subscribed for all of the stock of said hotel company, and thereafter remained the sole owners of such stock.

"On the 10th day of May, 1917, the owners conveyed the lots upon which the hotel was to be built, and the contract for building the same, to the hotel company. On August 3, 1917, the hotel company entered into a contract with the contractors wherein it was agreed that they should build a fourth story to the hotel, and receive for the walls thereof $8,211.55, with the option of the hotel company to have the same finished in accordance with the specifications for the third story; for which, if so finished, the contractors were to be paid the further sum of $6,740.45. This contract declared that it was a part of the original contract, and the work was to be done as therein provided, and the time for the completion of the building was extended 45 days. * * *

"On or about the ―――― day of ――――, 1917, the contractors assigned to the surety company all funds and estimates due or to become due for work done or material furnished, or to be furnished or done in the performance of their contract; and on April 20, 1917, the contractors and the surety company notified the owners of such assignment, and that thereafter all money due on said contract should be paid to the surety company, which was done, including work and material for the fourth story. The contractors abandoned work on the hotel, and the same was finished by the hotel company at a loss of $1,343.69.

"The following parties intervened in this cause, and there was due them by the·contractors, at the time of the trial hereof, the amounts set opposite their respective names, to wit: The Blazilmar Hotel Company, $1,343.-69; Nalle & Co., $5,107.25; James A. Thompson, $2,954.62; F. B. Seward, $239.13; Fairchild Lumber Company, $454.31; Prewitt Hardware Company, $345.60; Elgin Standard Brick Company, $518; J. Desco & Sons, $1,499.85; Torbett & Germond Company, $410.06; C. M. Gossett, $464.33; K. J. Peterson, $48.10; Federal Glass & Paint Company, $828.15; Mosher Manufacturing Company, $350; Southern Architectural Cement Stone Company, $165; Austin Builders' Supply Company, $160.85. For which sums the court rendered judgment against the contractors, in favor of said re-

spective parties. Judgment was also rendered in favor of said parties for said respective amounts against the surety company."

The Court of Civil Appeals, in addition to the findings of fact above set out, found that the surety company had no knowledge of the execution of the contract for the fourth story at the time of its execution, but that it did learn that the fourth story was being added and received additional pay by reason of the increased cost of the same, and by receiving such pay for the increased risk consented to and ratified the change from a three-story building to a four-story building. This finding is assailed by plaintiff in error as being without support in any competent evidence.

F. M. Coleman was the general agent in Texas for the Southern Surety Company, a foreign corporation. The bond sued on in this case was executed by said Coleman as attorney in fact for the Southern Surety Company in consideration of the payment by the contractor of a specific premium. Phelps, the architect, was permitted, at the instance of the hotel company, to testify without objection that some time in December, 1917, he, said Coleman, and one Kroeger, were in a car going from San Antonio to Medina Dam on a pleasure trip to hunt and fish; that somewhere on the way they were talking about contracts, and that the defendant Hood had gotten along nicely with his said hotel contract and was making good in every way; that Coleman volunteered the information that when extras were added he charged the same rate of premium as on the original contract, and that when deductions were made he credited them; that he had collected on this additional story on the Blazilmar Hotel; that he did not say anything about requiring a new bond in such cases.

Said Coleman testified in the case, and denied making the statement so attributed to him, and also denied the receipt of any additional premium on the bond sued on, and denied the receipt of any premium from anybody for the supplemental contract for the additional story to said hotel. He denied that said supplemental contract was ever presented to him for approval, and testified that he would not have approved it if it had been presented. He also presented his books and checks, and showed from them that no additional premium had been charged or received. Kroeger, the only other party in the car on the trip to Medina Dam, was not called as a witness.

Hood, a member of the firm of contractors, and in charge of the work, testified that when the first draft of the supplemental contract for the addition of said fourth story was prepared by the architect, it had on it a place for the approval of the surety company, or its agent; that he discussed the matter of securing such approval with the owners and architects, and that the owners decided not to require such approval, and instructed Phelps, the architect, to draw up a contract, omitting the same; that he did not ask the approval of such contract by the surety company; and that the premium paid to the surety company was for the original bond on the three-story building provided for in the original contract.

The finding of fact complained of is based solely upon the testimony of Phelps that Coleman, general agent for the surety company, made the declarations above quoted, under the circumstances testified to in connection therewith.

The Supreme Court of United States, in the case of Vicksburg & Meridian Railway Co. v. O'Brien, 119 U. S. 99, 104, 105, 7 Sup. Ct. 118, 121, 30 L. Ed. 299, 300, 301, considered the admissibility of a declaration of the engineer in charge of an engine and train which were derailed in an accident. The declaration was made some time afterwards, and was with reference to the rate of speed at the time of the accident. The court held that the declaration was incompetent as evidence, and in discussing the same said:

"There can be no dispute as to the general rules governing the admissibility of the declarations of an agent to affect the principal. The acts of an agent, within the scope of the authority delegated to him, are deemed the acts of the principal. Whatever he does in the lawful exercise of that authority is imputable to the principal, and may be proven without calling the agent as a witness. So, in consequence of the relation between him and the principal, his statement or declaration is, under some circumstances, regarded as of the nature of original evidence, 'being,' says Phillips, 'the ultimate fact to be proved, and not an admission of some other fact.' 1 Phill. Ev. 381. 'But it must be remembered,' says Greenleaf, 'that the admission of the agent cannot always be assimulated to the admission of the principal. The party's own admission, whenever made, may be given in evidence against him; but the admission or declaration of his agent binds him only when it is made during the continuance of the agency in regard to a transaction then depending, et dum fervet opus. It is because it is a verbal act and part of the res gestæ that it is admissible at all; and, therefore, it is not necessary to call the agent to prove it; but wherever what he did is admissible in evidence, there it is competent to prove what he said about the act *while he was doing it.*' 1 Greenleaf, § 113. This court had occasion in Packet Co. v. Clough, 20 Wall. 540 [87 U. S. bk. 22, L. Ed. 4068], to consider this question. Referring to the rule as stated by Mr. Justice Story in his treatise on Agency, § 134, that 'Where the acts of the agent will bind the principal, there his representations, declarations, and admissions respecting the subject matter will also bind him, *if made at the same time, and constituting part of the res gestæ,*' the court, speaking by Mr. Justice Strong, said: 'A close attention to this rule, which is of universal

acceptance, will solve almost every difficulty. But an act done by an agent cannot be varied, qualified, or explained, either by his declarations, which amount to no more than a mere narrative of a past occurrence, or by an isolated conversation held, or an isolated act done, at a later period. The reason is that the agent to do the act is not authorized to narrate what he had done, or how he had done it, and his declaration is no part of the res gestæ."

Mr. Fletcher, in his work on Corporations, vol. 3, pp. 3333 to 3336, inclusive, declares that the same rules as govern agents of individuals govern agents of corporations, and states such rules and supports them by an impressive array of authorities.

[1] So much of the rules so stated as are applicable to the issues under consideration are as follows:

"3. The admission, declaration or representation must have been made in regard to a matter within the scope of the authority of the officer or agent. * * *

"4. It must further appear that the officer or agent, at the time he made the statement, was engaged in executing the authority conferred upon him, and that the declarations related to, and were connected with the business then pending. They must be made officially and not as individuals, or as Prof. Mechem puts it, they must be such as 'can fairly be regarded as incident to the act authorized to be done. If there was no occasion to say anything, or anything of the sort in question, there can be no foundation for the admissibility.' Statements of officers of a corporation made in a casual conversation or in an affidavit procured by a third person for his own purposes, are not binding on the corporation.

"5. It follows from what has just been said that the statements must either be contemporaneous, or practically so, with the act to which they relate, or while the officer or agent is actually engaged in the performance of the transaction. It is well settled that declarations or admissions as to past events are not admissible. * * * This must be kept in mind, however; statements as to past events may be admissible and binding where the making of them by a particular agent or officer, in response to questions is a part of his duty, as in case of lost baggage, where inquiry is made of the baggagemaster. In such cases the duties are continuing ones.

"6. The statements must be of such a nature as to be part of the transaction. They must naturally accompany the act, or must be of such a nature as to unfold its character or quality."

The rules announced in the paragraphs above quoted are supported by the overwhelming weight of authority. 1 Elliott on Evidence, p. 378, § 255; 22 C. J. p. 386, § 460; 2 C. J. pp. 855–858, § 541; 1 R. C. L. pp. 508–510, §§ 49, 50; Waggoner v. Snody, 98 Tex. 512, 515, 516, 85 S. W. 1134; Ins. Co. v. Cummings, 98 Tex. 115, 121, 81 S. W. 705; Railway v. Robinson, 73 Tex. 277, 287, 11 S. W.

327; Railway v. York, 74 Tex. 364, 367, 368, 12 S. W. 68; Railway v. Johnson, 90 Tex. 304, 307, 308, 38 S. W. 520; Bullock v. Railway (Tex. Civ. App.) 55 S. W. 184; Railway v. Lackey (Tex. Civ. App.) 171 S. W. 540, 541; Stone v. Van Noy Railroad News Co., 153 Ky. 240, 154 S. W. 1092, 1094; Carson v. St. Joseph's Stock Yards Co., 167 Mo. App. 443, 151 S. W. 752; Parr v. Ill. Life Ins. Co., 178 Mo. App. 155, 165 S. W. 1152; East Tennessee Telephone Co. v. Simms' Administrator, 99 Ky. 404, 36 S. W. 171; Railway v. Dumas (Tex. Civ. App.) 149 S. W. 543, 547.

[2] According to the great weight of authority, the same rule is applied to the competency of the declarations of executive officers, managers, and general agents of a corporation when such declarations are sought to be used against the corporation they represent. The apparent scope of their authority is broader than in case of special or ordinary agents, but their declarations, to be competent as evidence against the corporation represented by them, must nevertheless be made while acting within the scope of such apparent authority and in connection with the performance of some duty to which such declarations are pertinent. We quote, in this conection, from 3 Fletcher, Cyc. Corp. p. 3337, § 2162 as follows:

"An officer or agent of a corporation, having authority to transact a particular business, *or to superintend and manage generally the current business and dealings of the corporation*, has, from such authority alone, no implied or incidental power to bind the corporation by declarations or admissions as to past events. The declarations or admissions are not admissible in evidence against the corporation unless they were made in the course of the transaction, so as to constitute part of the res gestæ. In other words, the declaration or statement of the agent must be (1) contemporaneous with or (2) in the course of the business or transaction and in relation thereto, and within the scope of the agency. It is elementary that an agent cannot bind his principal by declarations which are merely historical, and which have no connection with any transaction then being conducted by him with authority for his principal. The principle of the exclusion [of such evidence] is the same as obtains in the ordinary relation of principal and agent. The statements of the latter are inadmissible to affect the former, unless in respect to a transaction in which he is authorized to appear for the principal, and he has no authority to bind his principal by any statements as to bygone transactions. Hearsay evidence of this character is only permissible when it relates to statements by the *agent, which he was authorized by his principal to make, or to statements by him which constitute part of the transaction which is at issue between the parties.*" (Italics ours.)

We refer to the following in support of our holding: 3 Fletcher, Cyc. Corp. p. 3346, § 2169, and p. 3352, § 2172; 1 R. C. L. pp. 512, 513, §§ 52, 53; 22 C. J. p. 382, § 446;

Blain v. Express Co., 69 Tex. 74, 78, 6 S. W. 679; Cannel Coal Co. v. Luna (Tex. Civ. App.) 144 S. W. 721, 722, 723; Younce v. Broad River Lumber Co., 155 N. C. 239, 71 S. E. 329, Ann. Cas. 1912C, 107, and note, pp. 109–115.

Defendants in error, in support of their contention that said declarations of the agent, Coleman, were admissible and competent evidence, have cited an extensive list of authorities. We have examined them with attentive interest. The greater part of the authorities so cited are not in conflict with the rules above quoted. They belong to that class of cases involving a continuing transaction, or a continuing responsibility, and where the adverse party applies to the officer or agent of the corporation having the matter in charge for relief or information. The rule in such cases is stated in 3 Fletcher, Cyc. Corp. pp. 3343, 3344, § 2166, as follows:

"As in case of other agents, authority to make representations or admissions may be implied from an express authority to do some act or to act in some capacity. Thus it is said by the Supreme Court of the United States that 'the declarations made by an officer or agent of a corporation, in response to timely inquiries, properly addressed to him and relating to matters under his charge, in respect to which he is authorized in the usual course of business to give information, may be given in evidence against the corporation.' Familiar examples are found in railroad companies where such positions as baggagemaster, ticket agent, station or freight agent, conductor, sleeping car porter, etc., generally carry on their face the power to make statements binding on the company as to matters within their duties, in response to questions. So a telegraph operator may agree to notify the sender whether a telegram was delivered, and he binds the company by his statement that it was delivered."

Had the owners of said building, or their authorized representatives, approached Coleman, and in good faith inquired whether he, as agent of the surety company, had consented to the change to a four-story building, and had received an additional premium for the increased liability resulting therefrom, and he, in response to such inquiry, had made the declarations attributed to him by the witness Phelps, a different question would be presented. No such issue is presented by the evidence in this case.

There are, however, a few authorities presented in this connection by defendants in error which support, or tend to support, the theory that a managing officer or agent of a corporation is its alter ego, and that his declarations, whether made casually or in line with his duties, whether connected in time or place with the matter to which they relate, or entirely disassociated therefrom, are competent evidence against the corporation. Texas Standard Cotton Oil Co. v. National Cotton Oil Co. (Tex. Civ. App.) 40 S. W. 159;

Booker-Jones Oil Co. v. National Refining Co., 63 Tex. Civ. App. 142, 131 S. W. 623, 132 S. W. 815; Garrettson v. Merchants' & Bankers' Ins. Co., 92 Iowa, 293, 60 N. W. 540; Krogg v. Railroad, 77 Ga. 202, 4 Am. St. Rep. 79; 2 Wharton on Ev. § 1177; and 4 Thompson on Corporations (1st Ed.) § 4915—are among the authorities so cited. Some of these cases come, at least partly, within the application of the rules above announced, and the same may be said of the cases cited by the distinguished authors above referred to in support of their respective texts. However, in the 2d edition of Thompson on Corporations, the subject of declarations of officers and agents is treated in volume 2, § 1620 et seq., and the rules there announced are in harmony with the authorities above quoted, and made the basis of our holding in this case. The cases holding the extreme doctrine that a managing officer or agent of a corporation is its alter ego, and that his declarations, whenever and wherever made, are competent evidence against the corporation, are against the overwhelming weight of authority.

[3] The declarations of the agent, Coleman, under consideration were purely voluntary, and were made in a casual conversation and not in connection with, or explanatory of, any transaction in the line of his duty in which he was engaged at the time. He was not so engaged, but was on a hunting and fishing trip for his own pleasure and recreation. Such declarations were in the most material part a mere narration of a past transaction. They were incompetent as evidence against plaintiff in error.

[4] Evidence in itself wholly incompetent, and therefore without probative force, gains no vitality because admitted without objection. It will not support a verdict by a jury or a finding of fact by a court. Henry v. Phillips, 105 Tex. 459, 466, 151 S. W. 537; T. & P. Ry. Co. v. Johnson, 90 Tex. 304, 308, 38 S. W. 520; Sharp's Ex'r v. Baker, 22 Tex. 306, 315; Webb v. Reynolds (Tex. Com. App.) 207 S. W. 914, 916; Texas Midland R. Co. v. Cummer Mfg. Co. (Tex. Civ. App.) 207 S. W. 617, 620; Hopt v. Utah, 110 U. S. 574, 4 Sup. Ct. 202, 28 L. Ed. 262, 265, 266; Stone v. Van Noy R. News Co., 153 Ky. 240, 154 S. W. 1092, 1094; Moultrie Lumber Co. v. Driver Lumber Co., 122 Ga. 26, 49 S. E. 729; Eastlick v. Southern Ry. Co., 116 Ga. 48, 42 S. E. 499; McCauley v. Imperial Woolen Co., 261 Pa. 312, 326, 104 Atl. 617; Carroll v. Knickerbocker Ice Co., 218 N. Y. 435, 439, 113 N. E. 507, Ann. Cas. 1918B, 540.

The finding of the Court of Civil Appeals complained of in the assignment of error under consideration is without support in any competent evidence in the record, and such assignment is therefore sustained.

[5] Defendants in error contend that the judgments of the trial court and the Court of Civil Appeals should be affirmed, regard-

less of our holding as to the competency of the declarations of the agent Coleman. They assert as a basis for this contention that there is other sufficient evidence to sustain the finding of the trial court to the effect that plaintiff in error, with full knowledge of the change of the contract from a three to a four story building, consented to and ratified such change and alteration, and that in a case tried before the court as this was tried the admission of incompetent evidence does not require a reversal of the judgment, when there is other evidence in the record sufficient to sustain the same.

It affirmatively appears in the record in this case that the trial judge considered the evidence of the declarations of the agent, Coleman, in making his findings of fact as a basis for the judgment rendered, and the finding of the Court of Civil Appeals considered above and its affirmance of the case were expressly predicated thereon. Our Supreme Court in discussing when a case may be affirmed under the rule invoked by defendants in error, and when it should be reversed and remanded, notwithstanding such rule in the case of Railway v. Startz, 97 Tex. 167, 171, 77 S. W. 1, 2, said:

"The rule of practice assumes that the judge hearing all of the evidence has distinguished between the competent and incompetent, and that, where the former is clearly sufficient to support the judgment, he acted upon it rather than the latter. But in this case the hearsay evidence furnishes the only definite basis in the record for a judgment, and as the trial judge ruled that it was admissible, we do not think it a fair presumption that he disregarded it and based his judgment upon such uncertain evidence as otherwise appears."

In view of the fact that the trial court considered such incompetent evidence in making his findings in the case, instead of recommending that the cause be reversed and remanded to the Court of Civil Appeals for that court to pass upon the sufficiency of any other evidence in the record to sustain the judgment, we shall recommend that the cause be reversed and remanded to the district court for a new trial.

This disposition of the case requires us to pass upon plaintiff in error's contention that the bond sued on in this case is a statutory bond required by articles 5623 and 5623a, Complete Texas Statutes of 1920, that said statutes are, so far as requiring bond is concerned, unconstitutional and void, and that the bond sued on is therefore void and can form no basis for a recovery against it, regardless of whether it consented to and ratified the change in the original contract to secure the performance of which such bond was given.

The Court of Civil Appeals for the Sixth District considered these statutes in the case of Hess v. Denman Lumber Co. (Tex. Civ. App.) 218 S. W. 162. In that case the owner failed to require the contractor to give any bond for the performance of his contract. The Denman Lumber Company furnished the material to the contractor, and on his failing and refusing to pay therefor sued Hess, the owner, and recovered a personal judgment against him on the ground that he had negligently failed to require the contractor to give bond for its benefit as required by these statutes. The Court of Civil Appeals held that said statutes, in so far as they required the owner to take a bond from the contractor, interfered with the law of liberty of contract, and were therefore invalid, and reversed the judgment of the trial court, and rendered judgment in favor of the owner. The Supreme Court refused a writ of error.

In the case of Williams v. Baldwin (Tex. Com. App.) 228 S. W. 554, materialmen and laborers sought to hold the sureties on the contractor's bond liable for their unpaid claims. The bond was by its terms payable to the owner, and to all persons furnishing material or labor for the work. The sureties defended on the ground that the owner and contractor had, without their consent, changed the time of payments, and that they were thereby discharged by reason of such change. There was no provision in the bond that any change or alteration in the plan, building, construction, or method of payment should discharge the bond, but the materialmen and laborers sought to hold the sureties liable without such stipulation, by virtue of said article 5623a of the statute, which, among other things, provides:

"No change or alteration in the plans, building, construction or method of payment shall in any way avoid or affect the liability on said bond, and the sureties on said bond shall be limited to such defenses only as the principal on said bond could make."

This court in passing on that contention held the statute an unwarranted interference with the right of contract, and therefore unconstitutional, and the provision quoted unenforceable, but further held that the owner had the right, independent of any statute, to require the bond and to demand the insertion of the provision for the benefit of the materialmen and laborers. This court further held that the fact that the contract entered into between the owner and the contractors recited the giving of the bond to secure compliance with their contract excluded any presumption that the bond was given and the provisions thereof incorporated in compliance with the statute, and therefore held that it was unnecessary to decide whether the provision for the benefit of the materialmen and laborers would have been binding and enforceable if they had been inserted solely in compliance with and by force of the statute. Having held that there was nothing in the record showing the bond invalid, and the bond being by its terms payable to materialmen and laborers, this court held

that the sureties were not discharged from liability to such payees by reason of the fact that the owners and the contractor by agreement between themselves changed the time of payments, unless they knew of such change at the time they furnished the material or performed the labor.

The bond in this case is by its terms payable to the owners and all persons who may furnish material or labor for the work and is, with the exception of the dates, amounts, and parties, in substantially the same terms as the bond considered by the court in Williams v. Baldwin, supra. It bears the same date, and is witnessed by the same parties as the contract. It refers to and identifies the contract, the performance of which it stipulates to secure, but there is no reference of any kind to the bond in the contract.

There is nothing in the record showing or tending to show that the owners in taking this bond were constrained to do so solely by virtue of said statutes, or that any of its terms or conditions were demanded by the owners solely by reason thereof. There is nothing in the record showing or tending to show that the bond, or any of its terms or provisions, were anything other than the mutual voluntary agreements and engagements of the parties. The record in this case merely shows the bond sued on. When such bond is compared with said articles of the statutes, we find that the penalty therefor is in the minimum amount, and that it is payable and conditioned substantially as prescribed by them.

[6] Where a bond is wrongfully demanded under color of official authority or as a condition to some act, privilege, or benefit to which the maker is entitled without giving any bond, such bond, if given, will be held to be void for duress. Dupree v. State, 102 Tex. 455, 471, 119 S. W. 301; Leona Irr. Man. & Canal Co. v. Roberts, 52 Tex. 615, 622.

[7] The general rule is that a bond, whether required by statute or not, is good at common law if entered into voluntarily and for a valid consideration, and if not repugnant to the letter or policy of the law. A bond executed in pursuance of a statute is not necessarily void because the statute is afterwards declared unconstitutional. If entered into for a lawful purpose without duress and for a valid consideration, independent of the statute, such bond may be enforced as a common-law obligation. 9 C. J. pp. 28, 29, §§ 43, 45; 4 R. C. L. p. 55, § 15; Watkins v. Minter, 107 Tex. 428, 431, 432, 180 S W. 227; Leona Irr. Man. & Canal Co. v. Roberts, 62 Tex. 615, 622; Eichoff v. Tidball, 61 Tex. 421, 425; Burge v. Hinds, 46 Tex. Civ. App. 134, 101 S. W. 855; U. S. Fidelity & Guaranty Co. v. Ettenheimer, 70 Neb. 147, 99 N. W. 652; Stevenson v. Morgan, 67 Neb. 207, 93 N. W. 180, 108 Am. St. Rep. 629; People v. Newberry, 152 Mich. 292, 116 N. W. 419.

[8] Plaintiff in error raised the question of the validity of the bond in the trial court by general demurrer only. It admitted in its pleadings the execution of the bond sued on, and made no claim that it was executed under duress. It is a matter of common knowledge that it is customary in letting building contracts of the magnitude of this one for the owner to require the contractor to give a bond for the faithful performance of the contract and for the protection of the owner against the filing by subcontractors, materialmen, and laborers of liens against the building to be erected. By giving such bond the contractor secures the privilege of performing the contract with the attending chance of profit in doing so, and the privilege of receiving the stipulated payments as the work progresses, and applying them to the immediate payment of subcontractors, materialmen, and laborers, or otherwise as his pleasure or interest may suggest. He is not entitled to any such privileges or benefits except on the conditions prescribed by the owner. To deny the owner the right at his pleasure or discretion to require a bond to secure the performance of such contract and the right to require such terms and conditions incorporated therein as may in his opinion best serve his purpose or interest, because such bond may be required by, or the conditions thereof, may perchance be in substantial accord with, suggested by, or even copied from an unconstitutional statute, would be in effect to deny to him his constitutional right to freely contract. So far as the record before us is concerned, it is sufficient to say that there is nothing therein suggesting that the bond sued on is void or unenforceable on the grounds urged by plaintiff in error in the assignment under consideration. If, on another trial, however, the pleadings should be amended and evidence on this subject introduced, the validity of the bond sued on should be tested by the rules of law above announced, and the authorities cited in support of the same.

[9] The trial court found that certain claims sued for by defendants in error were for material and labor furnished for and used in the construction of the first three stories of the building as originally contracted for, but made no finding whether the same were furnished before or after the change of contract and notice thereof. As to all claims sued on herein by defendants in error, except of the Blazilmar Hotel Company, or its owners, for material or labor furnished for said building before the party so furnishing the same knew, or in the exercise of ordinary care ought to have known, that the contract had been changed by agreement between the owners and contractors, the rule announced in Williams v. Baldwin, supra, should be applied and from such claims plaintiff in error should not be held discharged by such change of contract, regardless of whether it consented to or ratified such change or not.

We recommend that the judgments of the district court and the Court of Civil Appeals both be reversed, and the cause remanded to the district court for another trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.