**LENTZ FEED & SEED COMPANY,**
Appellant,

v.

**B. G. MUELLER, d/b/a B. G. Mueller Co.,**
Appellee.

No. 13629.

Court of Civil Appeals of Texas.

San Antonio.

May 25, 1960.

Rehearing Denied June 22, 1960.

Guittard & Henderson, Victoria, for appellant.

Robt. H. Rice, San Antonio, for appellee.

MURRAY, Chief Justice.

This suit was instituted in the County Court at Law No. 1 of Bexar County, Texas, by B. G. Mueller, doing business as B. G. Mueller Company, against Lentz Feed and Seed Company, a corporation, seeking to recover damages for an alleged breach of contract in the sum of $503.98, with interest at the rate of six per cent per annum from January, 1956, and the

further sum of $250 attorney's fees. The trial was to a jury. The following special issue was submitted to them: "Do you find from a preponderance of the evidence that the defendant, Lentz Feed & Seed Company, prepaid the freight to Texas Common Points on the grain in question by valid transit tonnage?" The jury answered, "No." Based upon this verdict, the trial court rendered judgment in favor of plaintiff and against defendant in the sum of $611.26, from which judgment the Lentz Feed & Seed Company has prosecuted this appeal.

Appellant's first contention is that there is no evidence to support the rendition of this judgment. Appellant and appellee entered into the following memorandum contract on July 6, 1955, the pertinent part of which reads as follows:

"Date: July 6, 1955

We confirm purchase from: Lentz Feed & Seed Co. Victoria, Texas
Quantity: 1 car 100 capacity
Commodity: No. 2 Milo #56 14 or less moisture
Price: $2.23 delivered TCP
Terms: Drst on us thru Frost National Bank
Shipment: Next week
Routing:
Remarks: San Antonio net official railroad weights and San Antonio Federal grades."

In keeping with this contract, appellant shipped from Victoria, Texas, to B. G. Mueller, San Antonio, Texas, a carload of No. 2 Milo and drew a draft on B. G. Mueller through the Frost National Bank of San Antonio in the sum of $2,096.86. The bill of lading for the car of Milo was attached to this draft. The draft was paid by appellee and the car of Milo was delivered to him. The contract provides in effect that the car was to be delivered in San Antonio with the freight prepaid "TCP", that is to Texas Common Points. It appears that freight "paid TCP" means that the freight had been paid to any point in Texas. Apparently, such freight may be paid in cash or may be paid in tonnage. We take the following statement from appellee's brief as to what is meant by "tonnage or transit tonnage:"

"'Tonnage' or 'Transit Tonnage' simply means that if a shipper at Fort Worth, for instance, ships a car load of grain to a mill, for example, at Victoria, Texas, with freight paid to Texas Common Points, that mill can unload this grain, process it and then reship it to any Texas Common Point except back toward Fort Worth, or if desired the receiving mill can keep this car load and then can use the 'tonnage' or unused portion of the freight paid to Texas Common Points on any other car of grain of the same character shipped from Victoria. This is a privilege granted by the railroads and the railroads established the rules with reference thereto."

After this car of Milo was received by B. G. Mueller in San Antonio, it was sold by him to Sterling H. Nelson and Sons, Inc., and was diverted to Long Mont, Colorado. Appellee expected to be credited with freight to the furthermost point in Texas through which this car of Milo would pass, as the freight was supposed to be paid TCP. Apparently, when the car arrived in Colorado, demand was made upon Mueller for $498.98 additional freight, which he paid, and in this suit he asks to recover this sum. In order to prove that he had been required to pay additional freight, appellee was permitted to introduce in evidence, over appellant's objection, a freight bill prepared by the Colorado Southern Railway Company, a draft drawn on B. G. Mueller by Sterling H. Nelson Company, and a letter written by Intermountain Elevator Company or its agents or employees, as well as some other written instruments prepared by persons not parties to this suit. These instruments were offered for the purpose of showing the truth of the statements therein contained. These instruments were hearsay

 

as to appellant and were inadmissible. They were without probative force to establish the facts stated in them. Daggett v. Farmer's National Bank, Tex.Civ.App., 159 S.W. 198, affirmed, Farmer's Nat. Bank v. Daggett, Tex.Com.App., 2 S.W.2d 834; Winn v. Federal Land Bank of Houston, Tex.Civ.App., 164 S.W.2d 864; Ward v. National Benevolent Society, Tex.Civ.App., 155 S.W.2d 994; Southern Surety Company v. Nalle & Company, Tex.Com.App., 242 S.W. 197; Hargis v. Moxon, Tex.Civ. App., 34 S.W.2d 353; McCormick & Ray, Vol. 1, Texas Law of Evidence, p. 574; 31 C.J.S. Evidence § 193, p. 929.

■ There is no evidence of probative force to sustain the finding of the jury that appellant did not prepay the freight on this car of Milo to Texas Common Points by valid transit tonnage.

The cause was not fully developed and we feel that in the interest of justice it should not be reversed and rendered, but should be reversed and remanded for a new trial.

Reversed and remanded.